1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| 350 W.A. LLC and HOKOJITSUGUYU COMPANY, LTD.,<br><br>                                   Plaintiffs,<br><br>        vs.<br><br>CHUBB GROUP OF INSURANCE a/k/a FEDERAL INSURANCE COMPANY,<br><br>                                   Defendant. | CASE NO. 05CV75 WQH (CAB)<br><br>ORDER ON MOTIONS IN LIMINE AND OTHER MISCELLANEOUS MOTIONS |

12
13
14
15
16
17

HAYES, Judge:

18

        Pending before the Court are thirteen motions in limine filed by Plaintiff Hokojitsuguyu

19

Company (Docs. # 179-191), eleven motions in limine filed by Defendant Federal Insurance Company

20

(Docs. # 169-178, 193), Defendant's motion to strike (Doc. # 242), and two ex parte applications

21

requesting leave to file over-length briefs (Docs. # 192, 220-3).  The parties appeared at a motions in

22

limine hearing before the Honorable William Q. Hayes on Friday, September 7, 2007.  A jury trial in

23

this matter is set to begin on February 12, 2008. (Doc. # 166).

24

### BACKGROUND

25

        On December 14, 2004, Plaintiffs David Blackburn (Blackburn) and Hokojitsuguyo Company

26

(Hoko) filed this action in California State Superior Court in San Diego.  *See* Notice of Removal (Doc.

27

# 1).  Plaintiffs asserted claims for breach of insurance contract, breach of the implied covenant of

28

good faith and fair dealing, and other violations of state law against Defendant Federal Insurance

Company (Federal).  (Doc. # 1).  Plaintiffs' claims concerned a building located at 350 West Ash Street in San Diego, California (the Property), and specifically water damage which the Property sustained in November and December 2002.  Defendant Federal issued an insurance policy which insured the Property during November and December 2002, and the Complaint alleged that Defendant Federal improperly denied Plaintiffs' insurance claims and delayed in compensating Plaintiffs under the insurance policy in bad faith.

On December 12, 2005, Plaintiffs filed a First Amended Complaint which terminated David Blackburn as a Plaintiff, and named 350 W.A., LLC (350 W.A.) as a new Plaintiff.  (Doc. # 34).  The First Amended Complaint reasserted Plaintiffs claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and other miscellaneous relief.  (Doc. # 34).

On January 4, 2007, and after the Court ruled on the parties' cross-motions for summary judgment (Doc. # 101), the Court set this matter for jury trial.  (Doc. # 165).  The only claims which remain to be tried to the jury are Plaintiff Hoko's claims for breach of insurance contract and breach of the implied covenant of good faith and fair dealing.  (Doc. # 101); Revised Proposed Pretrial Order. The parties agree that 350 W.A. is no longer a party for the purposes of the jury trial.

## PLAINTIFFS' MOTIONS IN LIMINE

**1.  Plaintiff's # 1 - Motion to Exclude Reference to and Evidence of Wrongful Eviction Action in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.*  (Doc. # 179)**

In May 2003, Plaintiff Hoko transferred the Property to David Blackburn, and Blackburn immediately transferred the Property to 350 W.A.  It is undisputed that after the Property transferred to 350 W.A., 350 W.A. evicted the commercial tenants of the building.

The California state court litigation in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.* arose out of the May 2003 evictions, and involved commercial tenants' claims against 350 W.A. and David Blackburn for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of the covenant of quiet enjoyment, (4) constructive eviction, (5) nuisance, and (6) declaratory relief.  After a bench trial on the issues, the state trial court issued a Statement of Decision and Judgment in favor of the Plaintiffs and against 350 W.A. on the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the covenant of quiet enjoyment, and constructive eviction.  The state court judge concluded that 350 W.A.'s principal

owner, David Blackburn, intended to convert the Property to residential use from at least October 2002, and that 350 W.A. evicted the commercial tenants in May 2003 as a pretext so that Blackburn and 350 W.A. could renovate the building. *See* Defendant's Trial Ex. # 2815. The state court's findings in this respect appear in the opinion of the California Court of Appeal affirming the judgment of the state trial court. *See* Defendant's Trial Ex. # 3061.

This motion in limine concerns the relevance and admissibility of references and evidence of the various state court rulings and judgments in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.* in the trial before this Court. Plaintiff contends that the state court rulings are inadmissible hearsay, irrelevant, and unfairly prejudicial. Plaintiff further contends that the state court rulings cannot have a preclusive effect in this litigation because the issues in the state court proceedings were not identical and not actually litigated, and because the parties in the state court litigation are different than they are here.

Defendant contends that the rulings and judgments in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.* are admissible and relevant to the issue of how Defendant handled Plaintiff's insurance claim. Defendant contends that the State court rulings have preclusive effect as to certain issues, and in particular, the issue of David Blackburn's intent to convert the building to residential units.

**A. Collateral Estoppel**

Collateral estoppel prevents relitigation of issues of fact or law that were litigated in a prior proceeding. *Robi v. The Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). "In both offensive and defensive use situations the party against whom estoppel [issue preclusion] is asserted has litigated and lost in an earlier action." *Id.* "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

"Assuming a full and fair opportunity to litigate, . . . federal courts must accord preclusive effect to state court judgments." *Marquez v. Guttierez*, 51 F. Supp. 2d 1020, 1026 (E.D. Cal. 1999); *see also* 28 U.S.C. § 1738. State law governs the extent and elements of collateral estoppel. *Valley Wood Preserving, Inc. v. Paul*, 785 F.2d 751, 753 (9th Cir. 1986). In order to apply collateral estoppel

in California,

> (1) the issue must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision must have been final and on the merits; and (5) preclusion must be sought against a person who was a party or in privity with a party to the prior proceeding.

*Alvarez v. May Dep't Stores*, 143 Cal. App. 4th 1223, 1233 (2006). "The party asserting collateral estoppel bears the burden of establishing these requirements." *Pacific Lumber v. SWRCB*, 37 Cal. 4th 921, 943 (2006).

Even where the "minimal requirements" for collateral estoppel are satisfied, "the doctrine should not be applied if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case." *Bostick v. Flex Equipment Co.*, 147 Cal. App. 4th 80, 97 (2007). Accordingly, "[i]n deciding whether the doctrine is applicable in a particular situation a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Id.*

In order for Defendant Federal to use the state court decisions to preclude Plaintiff Hoko from litigating issues, Plaintiff Hoko must have been a party or in privity with a party in the state court litigation. *Alvarez*, 143 Cal. App. 4th at 1233. However, Plaintiff Hoko was not a party to the state court proceedings in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.*, and was not in privity with Blackburn and 350 W.A. at that time with respect to that litigation. In fact, the state trial court's findings indicate a rift and difference of opinion between Plaintiff Hoko and 350 W.A. at the time of the state court litigation. After reviewing the decisions of the state trial and appellate courts in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.*, the Court concludes that the judgments and findings of those courts should not be afforded preclusive effect here.

The Court concludes that the decisions of the state trial and appellate courts in the matter of *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.*, should not be afforded preclusive effect as to any issue litigated in the trial before this Court.

**B. Admissibility of the State Court Decisions**

In light of the Court's decision as to the preclusive effect of the state court decisions, and without determining whether the state court decisions are admissible pursuant to a hearsay exception,

the Court concludes that evidence of and references to the state court rulings and judgments in *Jacqueline Helleis, et al. v. 350 W.A., LLC, et al.* should be excluded during trial pursuant to Federal Rule of Evidence 403.  The Court concludes that any relevance that the state court rulings and judgments might have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005).

Plaintiff's motion in limine # 1 (Doc. # 179) is GRANTED.

**2.  Plaintiff's # 2 - Motion to Exclude Evidence Concerning the Conversion, and Alleged Intent to Convert, the Property From Offices to Residential Condominiums (Doc. # 180)**

Sometime after the November and December 2002 flood incidents, 350 W.A. converted the Property from commercial office space into residential condominiums.  Plaintiff moves to exclude evidence that David Blackburn had an intent to and did convert the Property from commercial office space into residential condominiums.

Plaintiff contends that evidence of the Property's conversion and/or Blackburn's intent to convert is irrelevant to this litigation and unfairly prejudicial.  Plaintiff contends that all evidence of conversion or Blackburn's intent to convert should be excluded pursuant to FED. R. EVID. 401 and 403.  Defendant contends that the evidence is relevant to a number of issues which will be tried to the jury.  Specifically, Defendant contends that evidence of conversion and Blackburn's intent to convert is relevant to show (1) that Blackburn and Hoko intended to defraud Defendant by submitting exaggerated claims, (2) that the November and December 2002 flood incidents did not cause new damage, (3) whether Plaintiff and Blackburn voided the insurance policy with Defendant by making false statements and representations, and (4) whether Defendant adjusted Plaintiff's claim in good faith.  Defendant further contends that the evidence is relevant to explain how Defendant adjusted Plaintiff's claims under the insurance policy,

Two claims are going forward at trial: (1) Plaintiff's claim for breach of insurance contract, and (2) Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  After reviewing the briefing and arguments in this case, it is evident that an important issue at trial will be Defendant's basis and rationale for adjusting the claims in the manner in which it did.  Accordingly, the Court concludes that what Defendant knew about the leaks and what information it learned which

assisted it in determining whether certain claims under the policy should be paid will also be relevant. The Court concludes that evidence of Blackburn's pre-existing intent to convert the Property will be relevant to explain how Defendant adjusted Plaintiff's claims under the policy.  In particular, such evidence will be relevant to explain why Defendant might have been suspicious and/or delayed in adjusting claims.

While Plaintiff contends that the evidence of Blackburn's intent to convert will be prejudicial and might unduly delay the trial, the Court concludes that any threat of such prejudice and delay does not substantially outweigh the probative value of the evidence.

Plaintiff's motion in limine # 2 (Doc. # 180) is DENIED.

**3. Plaintiff's # 3 - Motion to Exclude Evidence of Pre-existing Water and Mold Damage in Areas Unaffected by the November and December 2002 Flood Incidents (Doc. # 181)**

The parties agree that the Property was the subject of a construction defect lawsuit which occurred before the November and December 2002 flood incidents.  The parties further agree that certain parts of the Property sustained water damage prior to the November and December 2002 flood incidents.

Plaintiff's motion in limine # 3 seeks to exclude as irrelevant evidence that the Property sustained water and mold damage in areas which were unaffected by the November and December 2002 flood incidents.  *See* FED. R. EVID. 402 & 403.  Plaintiff claims that the only relevant issue with respect to Plaintiff's breach of contract claim is the extent of damage caused by the November and December 2002 flood incidents.  Plaintiff concedes that it submitted damage estimates to Defendant Federal after the November and December 2002 flood incidents which included costs associated with replacement of some areas of the Property which were not affected by the November and December 2002 flood incidents.  *See* Plaintiff's Motion in Limine # 3 (Doc. # 181) at 4-5.  However, Plaintiff claims that those replacement costs were not based on those areas being damaged by water in November and December 2002, but were based on sound economics and the requirements of certain federal laws, e.g., the Americans with Disabilities Act.

Defendant contends that evidence of pre-existing water damage is relevant to show (1) depreciation of the Property, (2) that Plaintiff misrepresented pre-existing damage to the Property, and

(3) that Defendant was justified in thoroughly investigating Plaintiff's claims given that Defendant had not been aware of previous water damage until after the November and December 2002 flood incidents. Defendant further contends that evidence of the pre-existing water damage is relevant to impeach Plaintiff's experts, since those experts were not informed of pre-November 2002 water damage to the Property before they assessed damage to the Property caused by the November and December 2002 flood incidents.

As noted in Defendant's opposition to this motion, it is difficult to determine where the pre-existing water damage to the Property ends and where the damage caused in November and December 2002 begins. However, after reviewing Plaintiff's moving papers, it is apparent that Plaintiff submitted at least some replacement cost estimates to Federal which included the replacement of certain parts of the Property which were not damaged by the November and December 2002 flood incidents. In light of that admission and this Court's findings below with respect to the appropriate Loss Damage Basis in this case, the Court concludes that, at a minimum, evidence of pre-existing water damage is relevant to whether the Property depreciated in value. The insurance policy at issue in this case specifically excluded from coverage payment for damages caused by wear and tear and depreciation. Furthermore, to the extent that Plaintiff submitted replacement estimates to Federal for areas which were not affected by the November and December 2002 flood incidents, but which were damaged by previous water damage, evidence of that pre-existing damage would be relevant to explain how and why Defendant adjusted Plaintiff's water damage claims under the insurance policy. The Court finds that such evidence would not be substantially outweighed the danger of unfair prejudice, undue delay, or jury confusion. *See* FED. R. EVID. 403.

Notwithstanding depreciation and Defendant's handling of Plaintiff's insurance claims, there is evidence that some of Plaintiff's experts were not fully aware of the Property's prior water damage and involvement in a construction defect lawsuit. *See* Federal's Opposition to Plaintiff's Motion in Limine # 3, Exs. I, J, M. To the extent that those experts included in their damages analyses water damage which existed before the November and December 2002 flood incidents, evidence that the water damage was pre-existing would be relevant to impeach those experts' opinions and conclusions. The Court finds that the relevance of that evidence would not be substantially outweighed the danger

1   of unfair prejudice, undue delay, or jury confusion.  *See* FED. R. EVID. 403.

2        For the above reasons, Plaintiff's motion in limine # 3 (Doc. # 181) is DENIED without

3   prejudice.

4

5   **4.  Plaintiff's # 4 - Motion to Determine the Applicable Measure of Indemnity (Doc. # 182)**

6        Pursuant to the insurance policy entered into by and between Defendant Federal and Plaintiff

7   Hoko, Defendant agreed to insure the Property against certain loss and damage.  This motion

8   addresses whether the "Replacement Cost Basis" or the "Actual Cost Value Basis" is the proper

9   measure of indemnity under the policy and certain undisputed facts of this case.

10       The insurance policy at issue here contains two alternative loss payment bases, "Replacement

11  Cost Basis" and "Actual Cost Value Basis."  The loss payment basis determines the amount of

12  coverage to which the insured is due when the insured's property suffers damage.  The "Replacement

13  Cost Basis" provision states in relevant part:

14       Lost or damaged covered property will be valued at the cost to repair or replace such
         property at the time of loss or damage, but not more than you actually spend to repair
15       or replace such property at the same or another location for the same use or occupancy.
         There is no deduction for physical deterioration or depreciation.

16       . . .

17
         If you do not repair or replace the covered property, we will only pay as provided
18       under Actual Cash Value Basis.

19  Notice of Lodgment of Exhibits in Support of Plaintiffs' In Limine Motions (Pl. Lodg.), Ex. B at

20  PCY000095.  The "Actual Cash Value Basis" provision states:

21       If the Loss Payment Basis shown in the Declarations is actual cash value, lost or
         damaged covered property will be valued at the cost to repair or replace such property
22       at the time of loss or damage with material of like kind and quality, less allowance for
         each of the following:
23
                    - physical deterioration;
24                  - physical depreciation;
                    - obsolescence; and
25                  - depletion.

26  Pl. Lodg., Ex. B at PCY000095.  The parties agree that Plaintiff remodeled the Property after the flood

27  incidents in November and December 2002, and converted the formerly commercial building into

28  condominiums.

**A. Replacement Cost Basis or Actual Cash Value Basis**

Plaintiff contends that Defendant is obligated to compensate Plaintiff for the cost to repair or replace the damaged building to its pre-loss condition pursuant to the "Replacement Cost Basis." Plaintiff concedes that the insurance policy references replacement "for the same use or occupancy," however, Plaintiff contends that the policy is ambiguous because the policy later references "repair or replace" without limiting such repair or replacement to the same use or occupancy. Plaintiff contends that because the policy is ambiguous, it must be interpreted against the drafter, Defendant Federal, and must be interpreted so that the proper measure of indemnity is the "Replacement Cost Basis."

Defendant contends that the policy is clear on its face, and that the "Actual Cash Value Basis" is the proper measure of indemnity because Plaintiff chose to covert the commercial building into condominiums. Defendant contends that when the policy is read in context, the policy limits the "Replacement Cost Basis" to situations in which Plaintiff replaced or repaired the building for the same use or occupancy. Defendant contends that Plaintiff's interpretation ignores the overall policy language and established rules of contract interpretation.

"A contract of insurance must be governed and interpreted by the same rules which ordinarily apply to other contracts," *Chase v. National Indem.*, 129 Cal. App. 2d 853, 858 (1954), and "[t]he fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992); *see also Blackhawk Corporation v. Gotham Insurance Co.*, 54 Cal. App. 4th 1090, 1096 (1997). Where contractual language is clear and explicit, the clear language governs. *Bank of the West*, 2 Cal. 4th at 1264. "On the other hand, if the terms of a promise are in any respect ambiguous or uncertain, [the promise] must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* "This rule, as applied to a promise of coverage in an insurance contract, protects not the subjective beliefs of the insurer, but, rather, the objectively reasonable expectations of the insured." *Id.*

"A provision in an insurance contract is ambiguous if it is capable of more than one reasonable construction." *Blackhawk*, 54 Cal. App. 4th at 1095. "However, courts will not strain policy language to create an ambiguity or label a provision ambiguous simply by isolating phrases and considering

them in the abstract." *Id.* Instead, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Poseidon Development v. Woodland Lane Estates*, 152 Cal. App. 4th 1106, 1114 (2007). "Specific provisions of a contract should not be considered in isolation." *Id.*

The insurance policy at issue here describes two loss payment bases, a "Replacement Cost Basis" and a "Actual Cash Value Basis." Pl. Lodg., Ex. B at PCY000095. The "Replacement Cost Basis" is the default basis, and provides that "[l]ost or damaged covered property will be valued at the cost to repair or replace such property at the time of loss or damage, but not more than you actually spend to repair or replace such property at the same or another location for the same use or occupancy." Pl. Lodg., Ex. B at PCY000095. Pursuant to this provision, when an insured collects under the "Replacement Cost Basis" provision, the insured cannot recover more than the amount actually spent to repair or replace property "for the same use or occupancy."

Aside from limiting recovery under the "repair or replace" provisions to repairs and replacements "for the same use or occupancy," the "Replacement Cost Basis" provision includes language that triggers application of the "Actual Cash Value Basis" provision. Specifically, the "Replacement Cost Basis" provision states that, "[i]f you do not repair or replace the covered property, we will only pay as provided under Actual Cash Value Basis." Pl. Lodg., Ex. B at PCY000095. Accordingly, if and when the insured does not "repair or replace" the covered property as described in paragraph three of the "Replacement Cost Basis" section of the policy, the "Actual Cash Value Basis" provision will apply.

The parties fundamentally disagree as to the proper definition of "repair or replace" as used in the third paragraph of the "Replacement Cost Basis" section of the policy. Plaintiff contends that "repair or replace" as used in paragraph three is ambiguous in light of the policy's use of "repair or replace" in the first paragraph of the "Replacement Cost Basis" section of the policy, and argues that "repair and replace" as used in the third paragraph should not be read in light of the "same use or occupancy" language which appears in paragraph one. Defendant contends that the "repair or replace" language in paragraph three of the "Replacement Cost Basis" section of the policy should be read in the context of paragraph one of that section, and notes that when read in context, the "repair or

replace" language used in paragraph three is also limited to repairs and replacements "at the same or another location for the same use or occupancy."

As noted above, "the whole of a contract is to be taken together, so as to give effect to every part" of the contract. *Poseidon*, 152 Cal. App. 4th at 1114. When read in isolation, "repair or replace" as used in the third paragraph of the "Replacement Cost Basis" section does not appear limited in any way to "the same use or occupancy." However, "[s]pecific provisions of a contract should not be considered in isolation," *Poseidon*, 152 Cal. App. 4th at 1114, and when read in context, it is apparent that "repair and replace" as used in the third paragraph of the "Replacement Cost Basis" section of the policy is limited by the "same use or occupancy" language of paragraph one.

"Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless. *Ratcliff Architects v. Vanir Constr. Management*, 88 Cal. App. 4th 595, 602 (1998). Plaintiff Hoko's argument that "repair or replace" should be interpreted as not including the "same use or occupancy" limitation would render the "same use or occupancy" provision "nugatory, inoperative, or meaningless." *Id*. Furthermore, when read as a whole, the "Replacement Cost Basis" provisions limit replacements or repairs to the "same use or occupancy," because paragraph one's detailed description of "repair or replace" defines "repair or replace" as being limited to "the same use or occupancy."

"Although the contract could have been more artfully written," the Court concludes that the insurance policy provisions at issue here are "not ambiguous," as recovery under the "Replacement Cost Basis" provision is limited to situations where the insured repaired or replaced the covered property for the same use or occupancy. *Ratcliff*, 88 Cal. App. 4th at 603. Plaintiff Hoko admits that the replacement costs were not spent "for the same use or occupancy." *See* Plaintiff's Response to Defendant's Motion in Limine # 5 at 3. Accordingly, under the undisputed facts of this case, the Court concludes that the "Actual Cash Value Basis" provision applies.

**B. The Burden of Proof under the "Actual Cash Value Basis" Provision**

Pursuant to the "Actual Cash Value Basis" provision of the insurance policy,

If the Loss Payment Basis shown in the Declarations is actual cash value, lost or damaged covered property will be valued at the cost to repair or replace such property at the time of loss or damage with material of like kind and quality, less allowance for each of the following:

- physical deterioration;
- physical depreciation;
- obsolescence; and
- depletion.

Pl. Lodg., Ex. B at PCY000095.

Plaintiff contends that Defendant has the burden to prove any amount of physical deterioration, depreciation, obsolescence, or depletion. Specifically, Plaintiff contends that the "Actual Cash Value Basis" operates as a policy exclusion, and the burden to prove policy exclusions is on the insurer. Defendant contends that it is Plaintiff's burden to prove physical deterioration, depreciation, obsolescence, or depletion. Defendant contends that (1) case law places the burden on the insured to prove actual cash value, (2) the "Actual Cash Value Basis" provision is not an exclusion but an alternative grant of coverage, and (3) the burden should be placed on the Plaintiff because Plaintiff, not Defendant, is in the sole position to identify depreciation, deterioration, obsolescence, and depletion.

"The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1995). "[O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Id.*

Both parties cite the California Court of Appeal decision in *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal. App. 4th 886, 894 (2001), to support their arguments, and each notes that the case concluded that the burden of establishing actual cash value is on the insured. Plaintiff contends, however, that the case is distinguishable on the grounds that the contract at issue in *Aegis* was a standard form policy which explicitly placed the burden of establishing actual cash value on the insured. Defendant contends that the case is not distinguishable on those grounds and is in fact on point. After reviewing *Aegis*, the Court concludes that the case is factually distinguishable on the grounds that a specific standard form policy was at issue. However, the Court finds that the case is nevertheless persuasive as to the burden. Indeed, the California Court of Appeal later cited *Aegis* in a context other than a standard form policy, and held that "[t]he burden was on [the insured] to establish the actual cash value at the time of the loss." *See Caro v. State Farm Ins. Co.*, 2d Civil No. B179019, 2005 WL 3216275,, * 4 (Dec. 1, 2005).

Notwithstanding the case law, Plaintiff argues that the depreciation and depletion provisions in the "Actual Cash Value Basis" section of the policy operate as exclusions, which Defendant has the burden to prove. However, not all limiting language operates as an exclusion, and the depreciation and depletion provisions here do not appear in the exclusions section of the policy. *See FMC Corp. v. Plaisted*, 61 Cal. App. 4th 1132, 1159 (1998), citing *Queen City Farms v. Central Nat. Ins. Co.*, 882 P.2d 703, 715 (1994) ("The argument that any limitation on coverage is exclusionary in nature and should be treated as an exclusion is plainly wrong."). As noted in *FMC Corp.* and *Queen City*, it is worth considering that "the burden of proof should be on the insured because the insured is likely to be in possession of or have greater access to whatever information exists about its expectations or intentions." *FMC Corp.*, 61 Cal. App. 4th at 1159; *Queen City*, 882 P.2d at 716. Defendant highlights this point by noting that Plaintiff is in a better position than Defendant to know the amounts of depreciation and depletion in this case, and cites *United States v. 194 Quaker Farms Rd.*, 85 F.3d 995, 990 (2d Cir. 1996), for the proposition that "[b]urden-shifting where one party has superior access to evidence on a particular issue is a common feature of our law."

After reviewing the case law, the parties briefs, and the policy arguments, the Court concludes that the burden of establishing actual cash value, and in turn depreciation and depletion, falls on the Plaintiff as the insured under the facts of this case.

Plaintiff's Motion in Limine # 4 (Doc. # 182) is DENIED.

**5. Plaintiff's # 5 - Motion to Exclude Evidence Consisting of Attorney-Client Communications (Doc.# 183)**

As discovery progressed in this case, Plaintiff disclosed several documents to Defendant which Plaintiff later asked Defendant to return on the grounds that they embodied protected attorney-client communications. Among others, Plaintiff sought return of (1) a September 11, 2003 letter from Joseph Oliva, Plaintiff's previous lawyer, to 350 W.A.'s principal, David Blackburn [Tr. Ex. 2602], (2) a document entitled "350 W.A. Action Plan" [Tr. Ex. 2393], and (3) an October 23, 2003 correspondence from David Blackburn to attorney Mike Duckor [Tr. Ex. 2637]. After Defendant refused to return the documents, the matter went before Magistrate Judge Bencivengo. After arguments and briefing, Magistrate Judge Bencivengo ruled that Plaintiff waived any claim to

privilege with respect to the three documents.

Notwithstanding the waiver of privilege, Plaintiff contends that Trial Exhibits 2602, 2393, and 2637 contain irrelevant information which is highly prejudicial to Plaintiff's case. Plaintiff contends that all three exhibits should be excluded pursuant to FED. R. EVID. 402 and 403, and as improper hearsay. Defendant contends that all three exhibits are relevant, are not improper hearsay, and are not unfairly prejudicial pursuant to FED. R. EVID. 403.

**A. The September 11, 2003 Letter [Tr. Ex. 2602]**

The September 11, 2003, letter from Joseph Oliva to David Blackburn generally concerns the applicable loss payment basis under the insurance policy and how the loss payment basis provisions should be interpreted in light of California law. The letter also contains a statement regarding an intent to convert the property into residential condominiums. Plaintiff contends that the statement regarding an intent to convert is irrelevant, and that the document is unfairly prejudicial because a jury may view negatively a strategic discussion with respect to maximizing insurance recovery. Defendant contends that the document is not unfairly prejudicial.

After reviewing Trial Exhibit # 2602, the Court finds that the document primarily consists of Oliva's opinion and interpretation of the insurance policy, and therefore is of limited or no relevance in this case. The Court finds that any limited relevance of Trial Exhibit # 2602 is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. *See* FED. R. EVID. 403.

Plaintiff's motion in limine # 5 is GRANTED without prejudice as to the September 11, 2003 letter [Tr. Ex. 2602]. Defendant may raise the issue again at trial if appropriate.

**B. The 350 W.A. Action Plan [Tr. Ex. 2393]**

Prepared by 350 W.A. LLC's former attorney Andrew Harold, the 350 W.A. Action Plan is a document which contains attorney Harold's opinions and strategy with respect to closing the sale of the Property from Plaintiff to Blackburn, and a frank discussion regarding the benefits that the threat of a bad faith action against Defendant Federal might produce. Plaintiff contends that the contents of the document are irrelevant and extremely prejudicial. Defendant contends that the document is relevant to show that Plaintiff wrongfully made claims for lost rents and tried to conceal

certain facts from Defendant.  Defendant contends that the document is also relevant to explain why and how Defendant adjusted Plaintiff's insurance claims in the manner in which it did.

After reviewing the 350 W.A. Action Plan, the Court finds that it generally contains Harold's opinions with respect to litigation strategy.  The Court concludes that the 350 W.A. Action Plan is of limited relevance to the case at bar, particularly since it is not clear what information he relied upon to form his opinions or whether Blackburn adopted his opinions.  The Court concludes that any limited relevance of the 350 W.A. Action Plan is substantially outweighed by dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of waste of time or needless presentation of cumulative evidence.  *See* FED. R. EVID. 403.

Plaintiff's motion in limine # 5 is GRANTED without prejudice as to the 350 W.A. Action Plan [Tr. Ex. 2393].  Defendant may raise the issue again at trial if appropriate.

## C.  October 23, 2003, Letter [Tr. Ex. 2637]

Trial Exhibit 2637 is a fax, dated October 23, 2003, sent by David Blackburn to attorney Mike Duckor.  The fax details Blackburn's belief that pre-existing damage to the Property justified removing the Property's commercial tenants.  Plaintiff contends that the fax is irrelevant and not probative of any issue of consequence.  Defendant contends that the fax is relevant because it contradicts Plaintiff's repeated assertions during the insurance investigation that the November and December 2002 flood incidents alone justified tenant relocation.

After reviewing the October 23, 2003 fax in its entirety, the Court concludes that the document is relevant as to the extent of the pre-existing damage and as to whether Plaintiff mislead Defendant with respect to the damages caused by the November and December 2002 flood incidents.  Though Plaintiff argues that the letter is unfairly prejudicial, its argument as to prejudice is based solely on the fact that it is an attorney-client communication.  However, the Magistrate Judge specifically found that Plaintiff expressly waived any privilege with respect to this document, and thus any prejudice must be viewed in light of that waiver.

After reviewing the parties' arguments, the Court concludes that the October 23, 2003 fax from Blackburn is relevant, and is not substantially outweighed by the danger of unfair prejudice or jury confusion.  Accordingly, Plaintiff's Motion in Limine # 5 is DENIED with respect to the October 23,

2003, fax [Tr. Ex. 2637].

**6. Plaintiff's # 6 - Motion to Exclude Evidence, Argument, or Suggestion That the November and December 2002 Flooding Incidents Were Intentionally Caused.  (Doc. # 184)**

Defendant marked as trial exhibits at least three pieces of evidence which allegedly suggest that the November and December 2002 flood incidents were intentionally caused.  Specifically, Defendant marked Trial Exhibit # 2336, a December 26, 2002 email from Plaintiff's representative Arthur Gimson to Plaintiff's property manager Mark Hoekstra in which Gimson notes his suspicion that the flooding incidents were intentionally caused, and Trial Exhibits # 2215 and 2020, pilot logs which suggest that Blackburn may have been in San Diego during the flood incidents despite Blackburn's denial to that effect.  Plaintiff seeks to exclude all three exhibits, as well as any other evidence or suggestion that the November and December 2002 flood incidents were intentionally caused, on the grounds that such evidence is irrelevant to coverage and highly prejudicial to Plaintiff's case.  Plaintiff contends that none of the exhibits actually prove or allow a jury to infer that the November and December 2002 flood incidents were intentionally caused.

Defendant notes that it does not intend to argue or admit any evidence at trial to suggest that David Blackburn or anyone else intentionally caused the November and December 2002 flood incidents.  However, Defendant contends that the Gimson email [Tr. Ex. 2336] is relevant to show that Plaintiff Hoko itself was suspicious of the leaks, and also to show why Plaintiff Hoko sent information to Defendant "for informational purposes" only.  Defendant contends that Plaintiff's suspicions explain and inform Defendant's actions in investigating and otherwise adjusting Plaintiff's insurance claim.

After reviewing the parties' briefing and the arguments made at the motions in limine hearing, it is evident that Plaintiff's principal motive in bringing this motion is to exclude any evidence or suggestion that David Blackburn or any other person intentionally caused the November and December 2002 flood incidents.  It is further evident that Defendant does not intend to argue or suggest that Blackburn or anyone else intentionally caused the flooding incidents.  Accordingly, Plaintiff's motion in limine # 6 is GRANTED to the extent that Defendant intends to argue, suggest, or admit evidence to show that Blackburn or anyone else intentionally caused the November and

December 2002 flood incidents.

Notwithstanding the Court's ruling, however, the Court finds that evidence of Plaintiff's suspicions with respect to the November and December 2002 flood incidents is relevant to show how Defendant acted in adjusting and investigating Plaintiff's insurance claim. Accordingly, Plaintiff's motion in limine # 6 is DENIED to the extent Defendant intends to show, suggest, or argue that Plaintiff Hoko was suspicious of the November and December 2002 flood incidents, and that Plaintiff communicated those suspicions to Defendant.

### A. Specific Exhibits at Issue Here

With respect to Arthur Gimson's December 26, 2002 email to Mark Hoekstra [Tr. Ex. 2336], the Court finds that the exhibit's relevance is not substantially outweighed by the danger of undue prejudice. Therefore, Plaintiff's motion in limine #6 is DENIED with respect to Trial Exhibit # 2336. With respect to the pilot logs [Tr. Exs. # 2215 & 2020], the Court concludes that Defendant has not established their relevance at this time. Accordingly, Plaintiff's motion in limine # 6 is GRANTED without prejudice with respect to the pilot logs [Tr. Exs. # 2215 & 2020], however, Defendant may raise the issue again at trial if appropriate.

### 7. Plaintiff's # 7 - Motion to Limit the Expert Opinion Testimony of Marc Goupille (Doc. # 185); *see also* Plaintiff's Supplemental Motion in Limine to Exclude Testimony by Undesignated Experts (Doc. # 251)

Defendant Federal designated Marc Goupille as an expert witness in this case, and the parties both agree that Goupille will provide "expert testimony on the extent of damages, and the appropriate scope of repairs, Building Code and fire resistivity deficiencies, and other issues covered in the reports already provided to [P]laintiffs." This motion addresses whether (1) Defendant can introduce into evidence reports upon which Goupille relied but did not produce, and (2) whether those expert reports upon which Goupille relied may be admitted by the experts who created them even though those other experts may not have been designated as experts by Defendant pursuant to FED. R. CIV. P. 26(a)(2).

### A. Whether Defendant can introduce through Goupille the reports of other experts upon which Goupille relied in making his expert opinions

At oral argument on the motions in limine, Defendant represented that it would not seek to introduce through Marc Goupille the expert reports upon which Goupille relied in fashioning his

opinions.  Accordingly, Plaintiff's motion in limine # 7 (Doc. # 185) is GRANTED to the extent that Defendant wishes to introduce through Marc Goupille, the expert reports upon which Goupille relied but did not himself create.

### B. Whether Defendant can call as witnesses the experts who created the reports upon which Goupille relied despite those experts not being designated as expert witness pursuant to FED. R. CIV. P. 26 (Doc. # 251)

The question of whether the expert reports relied upon by Marc Goupille can be admitted into evidence through the testimony of the experts who created them was raised in the third part of Plaintiff's motion in limine # 7, and was the subject of a supplemental motion in limine filed by Plaintiff.  *See* (Doc. # 251).

At issue in these motions are 18 experts which Defendant seeks to call at trial which Plaintiff contends must be excluded on the grounds that none of the 18 experts submitted an expert report pursuant to FED. R. CIV. P. 26(a)(2)(B).  Plaintiff contends that each of the 18 experts was retained by Defendant for the purposes of trial and therefore was required to submit an expert report pursuant to FED. R. CIV. P. 26(a)(2)(B).  Plaintiff contends none of the experts submitted a report, and therefore contends that exclusion of the witnesses is mandatory under the facts of this case.  Plaintiff contends that it would be prejudiced if Defendant's experts are allowed to testify because Plaintiff did not depose the experts at issue in these motions because Defendant never designated the experts as testifying experts and did not provide expert reports to support the experts' testimony.

Defendant notes that it employed each of the 18 experts which Plaintiff challenges months or years before the litigation in this case began for the purposes of investigating Plaintiff's original insurance claim.  Accordingly, Defendant contends that none of the challenged experts was required to submit an expert report.  Defendant contends that FED. R. CIV. P. 26(a)(2)(B) specifically exempts experts who are not retained or specifically employed to provide expert testimony from providing expert reports.  Defendant notes that it disclosed the names of all 18 challenged experts on numerous occasions, before and during this litigation.

After reviewing the moving papers and the evidence submitted in support, the Court concludes that Defendant retained or employed the 18 expert witnesses in an effort to investigate Plaintiff's insurance claims in and around 2002-2004, and well before the litigation in this case began in

December of 2004.  *See* (Doc. # 1).  Indeed, all of the challenged experts, and the reports which they created, were retained by Defendant to determine the merit of Plaintiff's insurance claims, and not for the purposes of this litigation.  Plaintiff does not dispute that each of the 18 experts was employed to assist in Defendant's adjustment of Plaintiff's insurance claims, and not to testify at trial.

FED. R. CIV. P. 26(a)(2) provides in pertinent part that:

**(2) Disclosure of Expert Testimony.**

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

The plain language of this Rule provides that each person who may be called to provide expert testimony must be disclosed to the opposing party.  *See* FED. R. CIV. P. 26(a)(2)(A).  In addition, subsection (a)(2)(B) of the Rule clarifies that those experts that are "retained or specially employed to provide expert testimony in the case," need to provide a written report.  *See* FED. R. CIV. P. 26(a)(2)(B).

As noted by other courts, "[t]he structure of Rule 26(a)(2) provides a clear distinction between the 'retained' class of experts and the unretained class of experts," which distinction is "fair and logical."  *Sprague v. Liberty Mutual Ins. Co.*, 177 F.R.D. 78, 81 (D.N.H. 1998); *see also Strozier v. USPS*, Case No. 04-cv-00074-MSK-CBS, 2005 U.S. Dist. LEXIS 37681, *6-7 (D. Colo. Aug. 19, 2005).  In *Sprague*, the Court cited the "principle purpose" of FED. R. CIV. P. 26(a) to permit a "reasonable opportunity to prepare for effective cross-examination," and then explained why expert reports are not required for unretained expert witnesses.  *Id*.  Specifically, the *Sprague* Court noted that:

The unretained experts, who formed opinions from pre-litigation observation,

> invariably have files from which any competent trial attorney can effectively cross-examine.  The retained expert, who under the former interrogatory rule frequently provided sketchy and vague answers, has no such files and is thus require to provide the report to enable effective cross-examination.  This reading puts unretained experts, because of their historical file, and retained experts, because of the required report, on equal footing for cross-examination purposes.

*Id.*; *see also Matsuura v. E.I. du Pont*, CIV NO. 96-01180, 2007 U.S. Dist. LEXIS 7891, *14-18 (D. Haw. Feb. 2, 2007).  Often referred to as "percipient expert witness[es]," unretained experts are limited in an important respect–they cannot "give opinion testimony based on information obtained outside of their personal knowledge . . . ." *Matsuura*, CIV NO. 96-01180, 2007 U.S. Dist. LEXIS 7891, *17 (D. Haw. Feb. 2, 2007).  Indeed, while an unretained percipient expert witness "may testify about observations based on personal knowledge . . . , opinion testimony based on information acquired outside of the witness' knowledge triggers the requirements of Rule 26(a)(2)(B); namely, the written expert report . . . ." *Id.*; *see also Stone v. Deagle, M.D.*, Case No. 05-cv-1438-RPM-CBS, 2006 U.S. Dist. LEXIS 90430, *10-11 (D. Colo. Dec. 14, 2006).

The evidence before the Court establishes that each of the 18 expert witnesses which Plaintiff challenges was retained by and provided reports to Defendant or Plaintiff prior to this litigation, and that Defendant disclosed these experts prior to and during this litigation.  Furthermore, Defendant indicates in its moving papers that it intends to use the expert witnesses to establish the basis for its denial of Plaintiff's insurance claims, and to counter Plaintiff's experts.  After reviewing the undisputed facts and the moving papers, the Court concludes that Defendant may call each of the 18 experts which are the subject of this motion because (1) they were disclosed to Plaintiff, and (2) they did not have to submit expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B).

Plaintiff's motion in limine # 7 (Doc. # 185) is GRANTED to the extent that Defendant wishes to introduce through Marc Goupille, the expert reports upon which Goupille relied but did not himself create.  In all other respects Plaintiff's motion in limine # 7 (Doc. # 185) is DENIED.  Plaintiff's supplemental motion to exclude the expert testimony of undesignated experts (Doc. # 251) is DENIED.

/

/

/

**8.  Plaintiff's # 8 - Motion to Limit Introduction of Attorney's Fees Invoices into Evidence (Doc. # 186)**

Defendant indicated at oral argument that it did not object to Plaintiff's motion in limine # 8 (Doc. # 186).  Accordingly, Plaintiff's motion in limine # 8 (Doc. # 186) is GRANTED.

**9.  Plaintiffs' # 9 - Motion to Limit the Testimony of Michael W. Vivoli (Doc. # 187)**

Before the present litigation began, Plaintiff's attorney Michael W. Vivoli represented David Blackburn in negotiating Blackburn's purchase of the Property from Plaintiff.  It is undisputed that the November and December 2002 flood incidents occurred while the Property was in escrow, and that Blackburn and Vivoli urged Plaintiff to more thoroughly present Plaintiff's insurance claims to Defendant.  It is further undisputed that Vivoli represented Blackburn in negotiating Plaintiff's assignment of insurance proceeds to Blackburn.  Finally, it is undisputed that Defendant deposed Vivoli before Plaintiff retained Vivoli with respect to these proceedings because Defendant believed Vivoli was a percipient witness.

Plaintiff seeks to limit the testimony of Vivoli to only issues regarding attorney's fees.  Plaintiff contends that Vivoli has no other relevant information, and that even if he did, there are other witnesses available to testify to the same information.  Plaintiff contends that Vivoli cannot testify to certain issues because any answers would reveal information protected by work product and attorney-client privileges.  Plaintiff contends that Vivoli should not be called as a witness because it is generally improper to call an opposing party's counsel.

Defendant contends that Vivoli is a percipient witness in this case, and notes that Vivoli was deposed in this case and considered a percipient witness before Plaintiff hired him as counsel.  Defendant contends that Vivoli has relevant information, particularly with respect to Hoko and Blackburn's presentation of the insurance claims to Defendant Federal.

After reviewing the parties' briefing and arguments at the motions in limine hearing, the Court concludes that it may be proper to allow Defendant to call Michael Vivoli during the upcoming jury trial notwithstanding the fact that he is Plaintiff's counsel.  Accordingly, the Court will DENY Plaintiff's motion in limine # 9 without prejudice.  Plaintiff may renew its objection to Vivoli's testimony at trial.

1    Plaintiff's motion in limine # 9 (Doc. # 187) is DENIED without prejudice.

2

3    **10.  Plaintiff's # 10 - Motion to Exclude the Testimony of Michael Diliberto (Doc. # 188)**

4    Defendant conceded in its opposition papers and at oral argument that it no longer intended

5    to call Michael Diliberto, and that it did not object to Plaintiff's motion in limine # 10.  Accordingly,

6    Plaintiff's motion in limine # 10 (Doc. # 188) is GRANTED.

7

8    **11.  Plaintiff's # 11 - Motion to Exclude any Argument, Comment, or Evidence Offered to
     Suggest that 350 W.A. Lacked Authority to Present and Prosecute Hoko's Insurance Claim to
9    Defendant Federal (Doc.# 189)**

10   At the time of the November and December 2002 flood incidents, David Blackburn was in the

11   process of purchasing the Property from Plaintiff Hoko.  To ease that transition, and recognizing that

12   the Property was protected by an insurance policy issued by Defendant Federal which covered damage

13   caused by floods and leaks at the Property, Plaintiff assigned to 350 W.A. any proceeds from the

14   insurance policy recovered by Plaintiff.

15   After Plaintiff assigned the policy proceeds to 350 W.A., David Blackburn, on behalf of 350

16   W.A., often communicated in person and in writing with Defendant regarding damages at the Property

17   caused by the November and December 2002 flood incidents.  Because Plaintiff did not assign the

18   actual claims under the policy, Plaintiff retained the claims and controlled the right to submit those

19   claims to Defendant.  Plaintiff provided Blackburn with several written powers of attorney in favor

20   of Blackburn which generally allowed Blackburn to speak on behalf of Plaintiff regarding the

21   insurance claims for three-month intervals.  This motion addresses three submissions made by

22   Blackburn, each of which Blackburn allegedly intended to be a sworn proof of loss as required by the

23   insurance policy, and whether the submissions were in fact sworn proofs of loss under the policy.

24   Specifically, this motion concerns whether Blackburn was entitled to submit sworn proofs of loss on

25   behalf of Plaintiff during periods which Blackburn did not hold a written power of attorney from

26   Plaintiff.

27   Plaintiff seeks to exclude any suggestion, evidence, or argument that Blackburn or 350 W.A.

28   lacked any authority to submit sworn proofs of loss.  Plaintiff contends that because Plaintiff assigned

the proceeds of the insurance policy to 350 W.A., 350 W.A. and its principal, Blackburn, necessarily had the authority to submit any claims to Defendant.  Plaintiff contends that it is irrelevant that Blackburn lacked a power of attorney when he submitted sworn proofs of loss in October 2003 and September 2004, because a power of attorney was not necessary.  Plaintiff further contends that the insurance policy does not require the sworn proof of loss to be from any specific person.  Finally, Plaintiff argues that Blackburn and 350 W.A. substantially complied with the policy's sworn proof of loss requirement, and that substantial compliance is all that the law requires.

Defendant contends that the insurance policy required Plaintiff Hoko as owner of the insurance claim, to submit any proof of loss sworn under penalty of perjury.  Defendant contends that Blackburn submitted two proofs of loss on behalf of Plaintiff during periods in which Blackburn did not hold a valid power of attorney from Plaintiff.  Defendant contends that those proofs of loss were not sworn under penalty of perjury on behalf of Plaintiff and were invalid under the policy.  Defendant concedes that Blackburn submitted a valid sworn proof of loss in June 2003, however, Defendant notes that Blackburn retracted the June 2003 proof of loss in July 2003.

After reviewing the briefing and the parties' arguments, the Court concludes that the primary issue to be decided by this motion is whether the October 2003 and September 2004 proofs of loss were properly sworn under penalty of perjury.  However, the Court concludes that the issue of whether the October 2003 and September 2004 were sworn proofs of loss as required by the insurance policy is an issue of fact to be decided by the jury.  Accordingly, Plaintiff motion in limine # 11 (Doc. # 189) is DENIED without prejudice.

**12.  Plaintiff's # 12 - Motion to Limit Evidence, Argument, or Suggestion that Plaintiff Hoko's Assignment of the Insurance Claim to 350 W.A. Constitutes a Policy Defense (Doc. # 190)**

As noted above, Plaintiff assigned the proceeds of its insurance policy to 350 W.A. after the November and December 2002 flood incidents.  By way of this motion, Plaintiff seeks to limit evidence, argument, or suggestion that Plaintiff's assignment of the insurance policy proceeds was legally improper or constitutes a policy defense.

At oral argument and in its brief in opposition to this motion, Defendant conceded that it does not intend to argue that Plaintiff's assignment of the policy proceeds was improper or that the

assignment itself constitutes a defense to the insurance policy.  Rather, Defendant intends to argue only that Plaintiff is bound to the extent that Blackburn or 350 W.A. inflated damages or submitted "false, exaggerated, or hysterical" claims to Defendant.  Plaintiff concedes that Defendant may argue and present evidence that Blackburn, 350 W.A., and or Plaintiff submitted false or inflated claims to Defendant.

The Court finds that Defendant does not oppose this motion, and does not intend to argue that Plaintiff's assignment of the insurance policy proceeds constitutes a policy defense.  Accordingly, Plaintiff's motion in limine # 12 (Doc. # 190) is GRANTED.

**13.   Plaintiff's # 13 - Motion to Exclude Evidence Regarding a Subsequent Transfer of Ownership of the Property (Doc. # 191)**

Sometime after Blackburn transferred the Property to 350 W.A., 350 W.A. transferred the Property to 350 W.A. Urban Homes (Urban Homes).  Plaintiff seeks to exclude evidence regarding the transfer from 350 W.A. to Urban Homes.

Plaintiff contends that Defendant may try to argue or imply that 350 W.A. and Blackburn transferred the Property to Urban Homes to achieve an improper tax advantage.  Plaintiff contends that such an argument would be irrelevant and improper.  Defendant stated at the motions in limine hearing that it will not argue that 350 W.A. transferred the Property to Urban Homes to achieve an improper tax advantage.  Transcript of Motions in Limine Hearing (Transcript), September 7, 2007 at 126-131. However, Defendant contends that evidence of the Property's transfer and the repairs and the condition of the building after the transfer is relevant in these proceedings.

Defendant stated that it will not attempt to argue that 350 W.A. transferred the Property to achieve an improper tax purpose, and therefore Plaintiff's motion in limine # 13 is GRANTED to the extent that Defendant may argue that the transfer was for an improper tax purpose, and otherwise DENIED.    Plaintiff's motion in limine # 13 (Doc. # 191) is GRANTED in part, and DENIED in part as described above.

/

/

/

**DEFENDANT'S MOTIONS IN LIMINE**

**1.   Defendant's # 1 - Motion to Exclude Any Contention That Hoko's December 26, 2002 Submission on Behalf of Blackburn Constituted a Legally Sufficient Notice of Claim (Doc. # 193)**

On December 26, 2002, Plaintiff's counsel William A. Halama sent a letter to Defendant's claims adjuster, Douglas Gilman, which included information Plaintiff received from David Blackburn with respect to damages caused by the November and December 2002 flood incidents.  Tr. Ex. # 21. The letter stated in pertinent part:

> As you may know, our client [Plaintiff] is in escrow to sell the Property to William Blackburn.  After the occurrence of the recent flood damage, Mr. Blackburn commissioned several studies and reports.  You will find enclosed a summary of his findings.
>
> Please note that our client [Plaintiff] has not yet had an opportunity to analyze the enclosed.  We are sending you the enclosed for informational purposes.

Tr. Ex. # 21.  Defendant contends that this letter does not constitute a notice of claim, and moves to exclude.

Defendant contends that the December 26, 2002 letter cannot constitute a notice of claim as a matter of law because (1) the letter indicates that Hoko hadn't reviewed and or adopted the enclosures which would constitute the claim, and (2) the cover letter indicated that the submissions were "for informational purposes."  With respect to the second argument, Defendant cites to California Code of Regulations Section 2695.2(n), which provides that the term "notice of claim" does not "include any written or oral communication provided by an insured or principal solely for informational or incident reporting purposes."   Defendant cites other communications between Defendant and Plaintiff which Defendant contends show that the December 26, 2002 letter [Tr. Ex. # 21] was not intended to be a notice of claim by either Plaintiff or Defendant.

Plaintiff contends that the December 26, 2002 letter constitutes a notice of claim, and notes that other documents which Defendant agrees constitute notice of claims also included the "for informational purposes" language.  Plaintiff contends that other documents, including Trial Exhibit # 273, show that Defendant actually interpreted the December 26, 2002 letter as a notice of claim. Under these circumstances, Plaintiff contends that it would be unfair and improper to preclude Plaintiff from arguing that the December 26, 2002 letter constituted a notice of claim.

After reviewing the briefing, the parties arguments at the motion in limine hearing, and the

limited record before the Court at this time, the Court concludes that there is a material issue of fact as to whether the December 26, 2002 letter and enclosures [Tr. Ex. # 21] constituted a notice of claim. The Court concludes that California Code of Regulations Section 2695.2(n) does not preclude admission of the December 26, 2002 letter and enclosures [Tr. Ex. # 21] because under the facts of this case, there is evidence that Defendant accepted other submissions as notice of claims which also included the "for informational purposes" language, and the December 26, 2002 letter does not indicate that the submission was "solely" for informational purposes.

For the reasons stated above, Defendant's motion in limine # 1 (Doc. # 193) is DENIED without prejudice.

**2. Defendant's # 2 - Motion to Exclude the Expert Testimony and Opinions of (1) Mr. Robert Timmons, (2) Dr. Heinz Poppendiek, and (3) Mr. Stephen Olsen as they Relate to Any Alleged Need to Replace Drywall Exposed to Water at the Property (Doc. # 178)**

Plaintiff seeks to call three expert witnesses during trial to support Plaintiff's argument that water from the November and December 2002 flood incidents damaged drywall at the Property by reducing its strength and fire-resistivity properties. Specifically, Plaintiff seeks to call (1) Robert Timmons, a mold consultant, (2) Dr. Heinz Poppendiek, an engineer, and (3) Stephen Olsen, a building inspector. Defendant seeks to exclude the testimony and opinions of each of these putative experts on the grounds that each expert is not qualified to testify as to the fire-resistivity of the drywall, and on the grounds that the experts' opinions are flawed, based on misinformation, and unreliable.

**A. Legal Standard for the Admission of Expert Testimony**

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." FED. R. EVID. 402; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148-49 (1999).

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation, and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). In serving this "gatekeeper" function, a district

court performs a two-part analysis. *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002). First, a district court "must determine nothing less than whether the experts' testimony reflects scientific knowledge, whether their findings are derived by the scientific method, and whether their work product amounts to good science." *Daubert v. Merrell Dow Pharmaceuticals (Daubert II)*, 43 F.3d 1311, 1315 (9th Cir. 1995) (internal quotations and citations omitted). "*Daubert's* general holding–setting forth the trial judge's general 'gatekeeping' obligation–applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 509 U.S. at 141. Second, the court "must ensure that the proposed expert testimony is relevant to the task at hand . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315.

"Trial courts must exercise reasonable discretion in evaluating and in determining how to evaluate the relevance and reliability of expert opinion testimony," and a court may hold what is known as a *Daubert* hearing to assist it in exercising its discretion. *United States v. Alatorre*, 22 F.3d 1098, 1102-03 (9th Cir. 2000). A trial judge has "considerable leeway" in deciding not only "how to go about determining whether particular expert testimony is reliable," but also in deciding whether the testimony is reliable. *Kumho Tire*, 509 U.S. at 153.

When considering whether expert testimony is reliable, a trial court should consider the factors laid out by the United States Supreme Court in *Daubert*, 509 U.S. at 593-595, including, (1) "whether the theory or technique employed by the expert is generally accepted in the scientific community, (2) whether "it's been subjected to peer review and publication," (3) "whether it can be and has been tested," and (4) "whether the known or potential rate of error is acceptable." *Daubert II*, 43 F.3d at 1316-17 (citing *Daubert*, 509 U.S. at 593-595). The United States Supreme Court noted that the trial judge's reliability inquiry is "flexible," and therefore trial courts can and should consider other factors not specifically mentioned by the United States Supreme Court in *Daubert*. *Daubert*, 509 U.S. at 594. To that end, trial courts have also considered "whether the expert is proposing to testify about matters growing directly out of independent research he or she has conducted or whether the opinion was developed expressly for the purposes of testifying," whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion," "whether the expert has adequately accounted

for obvious alternative explanations," "whether the expert is being as careful as he would be in his regular professional work," and "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion offered." *In re Silicone Gel Breast Implants Litigation*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (citing FED. R. EVID. 702 Advisory Committee's Notes); *see also Whisant v. U.S.*, Case No. C03-5121, 2006 U.S. Dist. LEXIS 76321, *6-7 (W.D. Wash Oct. 5, 2006).

As noted by the Court of Appeal for the Ninth Circuit in *Daubert II*, "one very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for the purposes of testifying." *Daubert II*, 43 F.3d at 1317; *see also Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). Where expert testimony is not based on independent research, "what is required is 'proof that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication.'" *Clausen*, 339 F.3d at 1056 (citing *Daubert II*, 43 F.3d at 1318). However, where expert testimony is not based on independent research and has not been subjected to peer review and publication, the "proffer of scientific testimony may still be deemed reliable enough to be admitted." *Clausen*, 339 F.3d at 1056. Indeed, "there may well be good reasons why a scientific study has not been published," for instance–"it may be too recent or of insufficiently broad interest." *Id.* "Where peer review and publication are absent, 'the experts must explain precisely how they went about reaching their conclusions and point to some objective source–a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like–to show that they have followed the scientific evidence method, as it is practiced by (at least) a recognized minority of scientists in their field.'" *Id.* (citing *Daubert II*, 43 F.3d at 1319).

**B. Mr. Robert Timmons**

Defendant contends that Timmons should not be allowed to testify because (1) he lacks sufficient expertise with respect to mold, (2) he was unaware of preexisting water and mold damage at the Property, and (3) he failed to perform sufficient mold testing.

Robert Timmons holds a B.S. in Environmental Science and Natural Resources from

California Polytechnic State University, is a certified Microbial Consultant, and has worked in the environmental and engineering fields since 1994. *Plaintiff's Lodgement in Opposition to Federal's Motions in Limine*, Ex. JJ. Defendant contends that Timmons is not qualified to give expert opinion because Timmons lacks an advanced degree, however, Plaintiff correctly notes that Timmons need not possess an advanced degree to testify as an expert. Pursuant to FED. R. EVID. 402, Timmons need only possess some "scientific, technical, or other specialized knowledge" which will assist the trier of fact in order to testify. *See* FED. R. EVID. 402. After reviewing Timmons' background, the Court finds that Timmons possesses the requisite qualifications to testify as an expert in this case.

Aside from challenging Timmons' education and background, Defendant challenges the factual underpinnings of Timmons' proffered testimony and the sufficiency of his tests. However, as noted by the Court of Appeal for the Ninth Circuit, "the weakness in the underpinnings of [expert] opinions may be developed upon cross-examination," as "such weakness goes to the weight and credibility of the testimony" as opposed to its admissibility. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n. 5 (9th Cir. 1987) (citing *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir. 1976)); *see also McLean v. 988011 Ontario*, 224 F.3d 797, 801 (6th Cir. 2000); *Davison v. Eldorado Resorts, LLC*, 05-CV-0021-BES (RAM), 2006 U.S. Dist. LEXIS 12598, *15 (D. Nev. Mar. 10, 2006). The Court finds that the majority of Defendant's criticisms go to the weight to be given Timmons' proffered testimony by the trier of fact, and thus do not render Timmons' proffered testimony unreliable. With respect to Timmons' testing, the Court finds that Timmons' tests are supported by the Gypsum Association's publications and policy statements. *Plaintiff's Lodgement in Opposition to Federal's Motions in Limine*, Exs. KKK, LLL. Though Defendant contends that Timmons' testing was insufficient, the Court finds that Timmons' tests were grounded in good science and Timmons' experience. The Court cannot conclude that Timmons' testing was so lacking as to render his opinion unreliable, as opposed to simply worthy of cross-examination. *See Daubert*, 509 U.S. at 596.

The Court concludes that Timmons' proffered testimony is both relevant and reliable to the case before the Court, and therefore the Court will permit Timmons to testify at trial.

**C.  Dr. Heinz Poppendiek**

Plaintiff seeks to call Dr. Heinz Poppendiek to testify as to the fire-resistivity and

combusitiblity of drywall which was damaged by the November and December 2002 flood incidents. Defendant contends that Poppendiek is neither a drywall nor fire-resistivity expert, and that Poppendiek lacked both information about preexisting damage at the Property and a sufficient testing methodology to support his proffered opinions. Defendant seeks an order excluding Poppendiek's proffered testimony as irrelevant and unreliable.

Poppendiek is an applied physicist with B.S., M.S., and PhD degrees from the University of California, Berkeley. *Poppendiek Declaration* (Doc. # 210), ¶ 2. Poppendiek is a certified professional engineer and a specialist with respect to "heat transfer, calorimitry, strength of materials, and materials science and technology." *Poppendiek Decl.*, ¶ 2. Poppendiek is a member of the American Society for Testing and Materials. *Poppendiek Decl.*, ¶ 2. The Court finds that Poppendiek possesses sufficient qualifications to testify as an expert in this case.

Defendant two principle criticisms of Poppendiek's proffered testimony are (1) that the testimony lacks sufficient basis in fact, and (2) that Poppendiek performed novel and incorrect tests on the damaged drywall which will not assist the trier of fact in any meaningful way. As noted above, Defendant's challanges to the factual underpinnings of Poppendiek's proffered testimony go to the weight, rather than the admissibility of the testimony. Accordingly, the Court finds that Defendant's arguments that Poppendiek lacked sufficient information about the Property and its pre-existing damage do not render Poppendiek's testimony unreliable. *See Bergen*, 816 F.2d at 1352 n.5. As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

With respect to Defendant's argument that Poppendiek performed improper and unreliable tests, the Court notes that Poppendiek's proffered testimony relies on novel tests which Poppendiek created for the purposes of this litigation. Plaintiff contends that Poppendiek's tests were logically based on other established tests, and that in order to test the drywall in this case, Poppendiek had to create a novel test because no established test existed to evaluate the fire dangers associated with water-damaged drywall. Defendant contends that Poppendiek's utilized a flawed testing methodology and that his conclusions are irrelevant because there is nothing to compare them to.

Where, as here, a novel test is created for the purposes of generating expert testimony for litigation, the expert "must explain precisely how [he] went about reaching [his] conclusions and point to some objective source–a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like–to show that [he] [has]followed the scientific evidence method, as it is practiced by (at least) a recognized minority of scientists in their field.'" *Clausen*, 339 F.3d at 1056 (citing *Daubert II*, 43 F.3d at 1319). In opposition to Defendant's motion in limine, Poppendiek submitted a declaration which details the testing methodology which he used in this case, and explains how and why the methodology was created based on prior established tests. *Poppendiek Decl.*, ¶¶ 3-10. In the explanation of his testing methodology, Poppendiek explains how his test related to other tests, particularly with respect to the differences, and noted that the modified test that he created was "within a researcher's latitude in applying ASTM procedures in accordance with the scientific method." *Poppendiek Decl.*, ¶ 5. In support of Poppendiek's testimony, Plaintiff included material from the Gypsum Association which (1) indicates that fire-resistivity and strength are important characteristics of drywall, and (2) outlines some testing protocol which is consistent with Poppendiek's methodology. *See Plaintiff's Lodgement in Opposition to Federal's Motions in Limine*, Exs. III, HHH, KKK. The Court finds that Plaintiff has met its burden with respect to establishing the reliability of Poppendiek's novel test. *Clausen*, 339 F.3d at 1055.

After reviewing the briefing, Poppendiek's background, and the evidence submitted in support of Poppendiek's testimony, the Court finds that Poppendiek's proffered testimony is both relevant and reliable. Though Poppendiek created a novel test for the purposes of this litigation, the Court finds that creating a novel test was permissible because other established tests did not generate desired information. The Court further finds that Poppendiek explained precisely the testing methodology used, how and why the methodology differed from other established tests, and pointed to objective sources to show that the test derived from the scientific method. In light of Poppendiek's expertise in materials strength, heat transfer, and combustability, the Court finds that Poppendiek can offer his proffered testimony with respect to combustability and drywall strength at trial.

**D.  Mr. Stephen Olsen**

Plaintiff seeks to call Stephen Olsen, a building inspector, to testify that certain damaged drywall had to be removed and replaced as a result of the November and December 2002 flood incidents.  Defendant contends that Olsen lacks qualifications and expertise with respect to drywall and fire-resistivity, and further, that Olsen improperly relied on the unreliable opinions of Timmons and Poppendiek in forming his opinions.

Olsen is a Certified Building Inspector and has a California State contractor's license. *Plaintiff's Lodgement in Opposition to Federal's Motions in Limine*, Ex. SS.  In addition, Olsen is a building code expert and has 30 years of experience in the construction industry.  *Plaintiff's Lodgement in Opposition to Federal's Motions in Limine*, Ex. SS.  The Court finds that Olsen possesses the requisite qualifications to testify in this case because he has a specialized knowledge and skill with respect to building inspection.

Defendant's primary challenge to Olsen is that he relied on the flawed opinions of Timmons and Poppendiek.  However, this Court has previously concluded that the opinions of Timmons and Poppendiek are relevant and reliable in this action, and both will be permitted to testify at trial.  The Court further notes that FED R. EVID. 703 "allows an expert to formulate an opinion on facts or data which are 'reasonably relied upon by experts in the particular field . . . .'" *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058, 1061 (9th Cir. 2003).  Here, the Court concludes that Olsen was entitled to rely on the opinions of Timmons and Poppendiek in forming Olsen's own unique opinions.  *See Gray v. United States*, 05CV1893 J (BLM), 2007 U.S. Dist. LEXIS 17937, *12-23 (S.D. Cal. Mar. 12, 2007).  Indeed, Olsen came to certain conclusions regarding replacement of drywall only after inspecting the Property, reviewing building codes, researching property files, and reviewing the opinions of Timmons and Poppendiek.  The Court finds this methodology proper and reliable.

As with the other experts, Defendant challenges the factual underpinnings of Olsen's testimony, particularly Olsen's ignorance of certain preexisting water damage at the Property.  The Court finds that Defendant's argument with respect to preexisting water damage goes to the weight to be given Olsen's testimony. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n. 5.  The Court further

finds that the alleged foundation inadequacies are not so pervasive as to render Olsen's entire testimony unreliable.  *See Daubert*, 509 U.S. 596 (vigorous cross-examination may be used to expose a shaky expert).

After reviewing Olsen's credentials, experience, and expert report, the Court concludes that Olsen's proffered testimony is both relevant and reliable.  *Daubert II*, 43 F.3d at 1315.  Olsen will be permitted to testify at trial.

Defendant's motion in limine # 2 (Doc. # 178) is DENIED.

**3 & 4. Defendant's # 3 & 4 - Motions to Exclude Expert Opinion Testimony of Steven C. Wright For Lack of Foundation  (Docs. # 169, 177)**

Plaintiff designated Steven C. Wright as a cost-estimation expert in this case.  Defendant seeks to exclude the opinion testimony of Wright on the grounds that Wright's testimony is unreliable and lacks proper foundation.  Specifically, Defendant contends that Wright's testimony improperly relies on (1) the untenable conclusions of Poppendiek, Timmons, and Olsen that the Property required massive drywall replacement after the November and December 2002 flood incidents, and (2) the untenable conclusion that massive renovation would require the Property to comply with certain buildings codes or statutes.

After reviewing the briefing, and in conjunction with the Court's ruling on Defendant's motion in limine # 2, the Court concludes that it cannot determine at this time whether the expert opinion testimony of Steven C. Wright is based on good science, reliable, and relevant to the case at hand. Accordingly, the Court will defer ruling on Defendant's motions in limine # 3 and 4 (Docs. # 169, 177) until after a *Daubert* hearing.

Defendant's motions in limine # 3 & 4 (Docs. # 169, 177) are DEFERRED.

**5.  Defendant's # 5 - Motion to Determine the Applicable Measure of Indemnity (Doc. # 170)**

The substance of this motion is the same as Plaintiff's motion in limine # 4, and the Court's ruling above applies here.  For the reasons stated in the Court's discussion of Plaintiff's motion in limine # 4, Defendant's motion in limine # 5 (Doc. # 170) is GRANTED.

**6.  Defendant's # 6 - Motion to Exclude any Contention Relating to Insurance Code Section 2071.1 (Doc. # 171)**

Defendant seeks an order precluding Plaintiff from citing or referencing CAL. INS. CODE § 2071.1 in support of Plaintiff's claim for bad faith.  Defendant contends that the statute only applies to residential insurance policies, and therefore, argues that any reference or citation to the statute is irrelevant and prejudicial in this case.  Plaintiff contends that the statute is relevant to this case.

CAL. INS. CODE § 2071.1 outlines policies and procedures governing examinations under oath, and requires an insurer to notify an insured of an insurer's decision to conduct an examination under oath.  *See* CAL. INS. CODE § 2071.1(a)(1).  CAL. INS. CODE § 2071.1, however, does not apply to every insurance policy.  Rather, CAL. INS. CODE § 2071.1 applies "only to policies of residential property insurance . . . ."  CAL. INS. CODE § 790.031.

The parties agree that the insurance policy at issue in this case is a commercial insurance policy and not a residential insurance policy.  Accordingly, the Court concludes that Defendant was not required to comply with CAL. INS. CODE § 2071.1 in adjusting Plaintiff's insurance claim and that any citation or reference to CAL. INS. CODE § 2071.1 would be irrelevant in these proceedings.

Defendant's motion in limine # 6 (Doc. # 171) is GRANTED.

**7.  Defendant's # 7 - Motion to Exclude Certain Opinion Testimony of Joseph F. Gildner (Doc. # 172)**

Plaintiff designated Joseph F. Gildner as a claims-handling and "bad faith" expert in this case.  Defendant seeks to exclude certain opinion testimony that Plaintiff may elicit from Gildner at trial.

Defendant challenges Gildner's proposed testimony on three grounds.  First, Defendant contends that Gildner should not be able to testify that there could be a claim of bad faith even if there was no insurance coverage.  Second, Defendant contends that Gildner is not an expert with respect to dry-wall testing, and therefore should not be allowed to opine as to whether Federal was required to perform certain tests.  Third, Defendant contends that Gilder is not a mold expert, and therefore should not be permitted to testify as to growth rates of mold, and as to whether certain mold preexisted the November and December 2002 flood incidents.

Plaintiff concedes that Gildner cannot testify that a claim of bad faith survives notwithstanding

whether insurance coverage exists, and notes that it will not seek to elicit such testimony from Gildner.  Plaintiff contends, however, that Gildner can testify that in opposing Plaintiff's claim Defendant performed the wrong drywall tests.  Plaintiff further contends that Gildner can testify as to whether certain mold predated the November and December 2002 flood incidents.

The parties agree that Gildner cannot testify that a bad faith claim can survive in this case even if there were a determination that no coverage existed for Plaintiff's insurance claims.  Indeed, in order for a plaintiff to recover on a claim of bad faith, the plaintiff must first establish a basis for coverage. *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1078 (2007); *Waller v. Truck Ins. Exch. Inc.*, 11 Cal. 4th 1, 36 (1995).  To the extent that Plaintiff may attempt to elicit testimony from Gildner that a bad faith claim can survive a finding of no coverage, Defendant's motion in limine # 7 (Doc. # 172) is GRANTED.

The balance of Defendant's motion in limine # 7 concerns the scope of Gildner's testimony and whether he possesses the requisite qualifications to testify as to (1) Defendant's choice of dry-wall testing and (2) whether certain mold preexisted the November and December 2002 flood incidents.  As noted at the hearing on motions in limine, the Court will not exclude an expert witness in this case without a *Daubert* hearing.  Accordingly, the Court defers ruling on the balance of Defendant's motion in limine # 7 (Doc. # 172) until after a *Daubert* hearing.

Defendant's motion in limine # 7 (Doc. # 172) is GRANTED in part, and DEFERRED in part as detailed above.

**8.  Defendant's # 8 - Motion to Exclude Evidence of Any Claim to Recovery of "Brandt" Fees (Doc. # 173)**

Pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813, 817-19 (1985), when an insurer's breach of the covenant of good faith and fair dealing "reasonably compels the insured to retain an attorney to obtain the benefits due under a policy," the insured may "recover for all detriment proximately resulting from the insurer's bad faith," including "those attorney's fees that were incurred to obtain the policy benefits and that would not have been incurred but for the insurer's tortious conduct." *See also Essex Insurance Company v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1257-58 (2006).  The attorney's fees recoverable under this rule are known as "Brandt" fees. *See Essex*, 38 Cal. 4th at 157-

58.

Defendant seeks to exclude any evidence or claim of "Brandt" fees in this case.  Defendant concedes that an insured who incurs attorney's fees in obtaining benefits under an insurance policy may later recover those attorney fees pursuant to *Brandt*.  Defendant further concedes that where an insured assigns claims or causes of action against an insurer to a third party, the third party can recover *Brandt* fees against the insurer if the third party shows that the insurer denied a claim in bad faith.  *See Essex*, 28 Cal. 4th at 1264-65.  Defendant contends that Plaintiff is not entitled to *Brandt* fees in this case, however, because (1) Plaintiff did not incur any attorney's fees in this case–David Blackburn did, and (2) Plaintiff only assigned policy proceeds to Blackburn, and did not assign claims or causes of action.  Defendant contends that the rule in *Essex* allowing recovery of *Brandt* fees by third parties is limited to situations where an insured assigns "all claims and/or causes of action" to the third party, and does not include situations where an insured assigns only policy proceeds.  Defendant further notes that a third party is not claiming *Brandt* fees here; rather it is the Plaintiff Hoko that is seeking the fees.  (Doc. # 173 at 6).

Plaintiff cites *Essex* for the proposition that where an insured assigns the "right to recover the policy benefits in full," the assignee of those rights can recover *Brandt* fees.  *Essex*, 28 Cal. 4th at 1264.  Plaintiff challenges Defendant's interpretation of *Essex* as too narrow, and notes that if Plaintiff were not allowed to recover *Brandt* fees, Defendant would essentially receive a windfall to which it is not entitled.  Plaintiff contends that *Essex* requires the Court to deny Defendant's motion in limine # 8.

Both parties cite *Essex* as the most relevant case to the issue presented in this motion.  *See Essex Insurance Company v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1257-58 (2006).  The parties disagree, however, as to whether *Essex* controls.  Defendant contends that *Essex* does not control because it is factually distinguishable from the case at bar.  Plaintiff, on the other hand, contends that *Essex* controls because the case clearly intends for *Brandt* fees to be recoverable under situations akin to the facts here.

Defendant correctly notes that the insured in *Essex* assigned claims and causes of action to a third party, whereas here, Plaintiff assigned only insurance policy proceeds.  However, the Court

agrees with Plaintiff that the rule of *Essex* is not necessarily limited to situations involving the assignment of claims and causes of action.  Indeed, *Essex* noted that,

> We agree with the Court of Appeal here that the right that Sanchez assigned to Five Star was the 'right to recover the policy benefits in full, undiminished by the attorney fees incurred in bringing this action to recover those benefits.'  Were we to accept Essex's argument, Sanchez would no longer be assigning the right to recover the policy benefits *in full*.

*Essex*, 38 Cal. 4th at 1264.  While an assignment of claims and causes of action occurred in *Essex*, the *Essex* Court ultimately found that the assignment included "the right to recover the policy benefits in full, undiminished by the attorney fees incurred in bringing [the] action to recover those benefits." *Id*.  The *Essex* Court did not limit its holding in a way which would exclude its application here.

After reviewing the facts alleged in this case, particularly Trial Exhibits 5 and 6, Plaintiff assigned to Blackburn "the right to recover the policy benefits in full, undiminished by the attorney fees incurred."  *Id*; *see also* Tr. Ex. # 5.  Plaintiff assigned Blackburn the right to participate and assist in prosecuting the insurance claims against Defendant in order ensure that Blackburn would realize any proceeds to which Plaintiff may have been entitled.  *See* Tr. Ex. # 5 at 3.  The Court concludes that Plaintiff is entitled to claim *Brandt* fees and to present evidence to support that claim.

Defendant's motion in limine # 8 (Doc. # 173) is DENIED.

**9.  Defendant's # 9 - Motion to Exclude the Expert Testimony and Opinions of Gene Royce, Esq. (Doc. # 174)**

Plaintiff designated Gene Royce, Esq. (Royce) as its expert on "the reasonableness of Plaintiff's fees and costs incurred in connection with this lawsuit."  Defendant seeks to exclude Royce's expert testimony in its entirety.  (Doc. # 174).

Defendant contends that Royce's methodology in assessing the reasonableness of Plaintiff's attorney's fees is unreliable and an improper basis for expert opinion.  Defendant further contends that Royce relied on bills and invoices unrelated to this litigation to support his opinion that Plaintiff's fees and costs are reasonable.  Finally, Defendant contends that Royce should not be able to opine on *Brandt* fees because Royce explicitly testified that he wasn't an expert on *Brandt* fees at his deposition.

In response to Defendant's motion in limine # 9, Plaintiff makes two distinct arguments.  First,

Plaintiff contends that Royce can no longer testify as a witness in this case because Royce works for a firm for which Federal is a major client. Plaintiff contends that the Court should allow Plaintiff to substitute a new expert in the place of Royce and deny Defendant's motion in limine # 9 as moot. Second, Plaintiff contends that despite Royce's "unique" methodology, Royce's proposed testimony is nevertheless relevant and reliable. *Plaintiff's Opposition to Defendant's Motion in Limine # 9* at 1, 3.

In response to Plaintiff's opposition, Defendant notes that Magistrate Judge Bencivengo previously denied Plaintiff's request to substitute an expert, and further notes that if the Court finds Royce's testimony unreliable under *Daubert*, Plaintiff will not be allowed to substitute an expert. If the Court finds Royce's testimony reliable and relevant under *Daubert*, Defendant states that it will waive any conflict with respect to Royce.

In light of Plaintiff's response to this motion in limine, it is evident that two issues are before the Court: (1) whether Royce's expert testimony is reliable and relevant under *Daubert*, and (2) whether Plaintiff should be permitted to substitute a new expert witness in the place of Royce if Royce's testimony is deemed relevant and reliable under *Daubert*. The Court has previously stated that it will not exclude an expert without a *Daubert* hearing. Accordingly, the Court will defer ruling on this motion until after a *Daubert* hearing.

Defendant's motion in limine # 9 (Doc. # 174) is DEFERRED.

**10. Defendant's # 10 - Motion to Exclude Expert Opinions Not Set Forth in Plaintiff's Expert(s)' Reports and/or Deposition Testimony (Doc. # 175)**

Defendant moves to exclude Plaintiff's experts from offering opinions which are beyond the scope of those experts' previously disclosed reports. (Doc. # 175).

Citing FED. R. CIV. P. 26, Defendant seeks an order precluding Plaintiff's experts from testifying to opinions not included in the expert reports. Defendant contends that allowing such expert testimony would be unfairly prejudicial. Defendant also notes that each of Plaintiff's experts has previously represented that the entirety of his or her opinions were included in an expert report.

Plaintiff contends that the motion should be denied as premature, and notes that no expert has yet testified beyond the scope of his or her expert report. Plaintiff further contends that an expert can

testify beyond the scope of the expert's report in certain limited situations.

After reviewing the briefing and the parties arguments at the motion in limine hearing, the Court concludes that this motion is premature in light of the fact that Plaintiff has not yet attempted to elicit testimony from any expert.  Furthermore, aside from one or two general examples, Defendant has not raised any objections to any particular expert or opinion.[1]  Accordingly, Defendant's motion in limine # 10 (Doc. # 175) is DENIED without prejudice.  Defendant may raise this objection at trial with respect to specific experts and opinions.

Defendant's motion in limine # 10 (Doc. # 175) is DENIED without prejudice.

## 11.  Defendant's # 11 - Motion to Exclude Evidence or Argument Re: "Bad Faith" Because of the Existence of a Genuine Dispute (Doc. # 176)

In order for an insured to establish a claim for breach of the implied covenant of good faith and fair dealing against an insurer in an insurance coverage dispute, the insured must allege and prove that "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause."  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001), citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990).  Where a defendant can show that there was "genuine dispute as to coverage," a claim for breach of the implied covenant of good faith and fair dealing can be dismissed before trial.  *Id.*  "It is well established that bad faith liability cannot be imposed where there exists a genuine issue as to the insurer's liability under California law."  *Fraley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282, 1292 (2000).

Defendant seeks to exclude at trial evidence or argument of Defendant's alleged bad faith on the grounds that a genuine dispute as to coverage existed at the time that Defendant investigated Plaintiff's insurance claims.  Defendant contends that the record and undisputed facts before the Court clearly reflect a genuine dispute regarding the scope of damages at the Property after the November and December 2002 flood incidents.  Accordingly, Defendant contends that any claim for bad faith

---

[1]  Defendant flagged Trial Exhibit # 81 [Commercial Buildings-Depreciation Table] as an exhibit which no expert relied upon or mentioned in an expert report, and contends that the exhibit should not be introduced through any expert at trial.  Counsel for Plaintiff stated at oral argument that Plaintiff would not seek to introduce Trial Exhibit # 81 at trial through an expert, and therefore the motion is moot with respect to Trial Exhibit # 81.  Transcript at 150-52.

1   must be precluded as a matter of law.

2        Plaintiff cites this Court's previous order on cross-motions for summary judgment (Doc. #

3   101), and notes that this Court has already rejected Defendant's genuine dispute argument.  Plaintiff

4   further contends that there is ample evidence that Defendant dishonestly selected experts, and notes

5   that such evidence defeats Defendant's genuine dispute argument.  Finally, Plaintiff points to evidence

6   which it contends shows that Defendant recognized that it improperly handled Plaintiff's insurance

7   claim, and notes that this evidence entitles Plaintiff to a jury trial on the bad faith claim.

8        As noted by the Court of Appeals for the Ninth Circuit in *Guebara*, the existence of the

9   genuine dispute doctrine does not "eliminate bad faith claims based on an insurer's allegedly biased

10  investigation." *Guebara*, 237 F.3d at 996.  Indeed, the Court of Appeals specifically noted that claims

11  of bad faith could go to a jury when an "insurer dishonestly selected its experts," or where "the

12  insurer's experts were unreasonable." *Id*.  There is evidence that Defendant selected biased experts,

13  and that some of those experts findings may have been unreasonable. *See* (Doc. # 101 at 10-13).

14  Accordingly, the Court concludes that Plaintiff is entitled to present its claim for breach of the implied

15  covenant of good faith and fair dealing to the jury.

16       Defendant's motion in limine # 11 (Doc. # 176) is DENIED.

17

18                        **MISCELLANEOUS MOTIONS**

19  **1.  Defendant's Motion to Strike Plaintiff's Notice of Lodgment Exhibits "HHH"-"LLL," and
    the Declaration of Dr. Heinz Poppendiek (Doc. # 242)**

20

21       Defendant moves to strike a newly submitted Declaration of Dr. Heinz Poppendiek (Doc. #

22  220-3), as well as Exhibits "HHH"-"LLL" (Doc. # 219-11 at 9-43), submitted by Plaintiff in support

23  of Plaintiff's oppositions to Defendant's motions in limine.  Defendant contends that the Declaration

24  of Heinz Poppendiek (Doc. # 220-3) should be excluded because it is new, has not previously been

25  disclosed to Defendant, and contains opinions and statements which should have been disclosed

26  during discovery.  Defendant contends that exhibits "HHH"-"LLL" (Doc. # 219-11 at 9-43) should

27  be excluded on the grounds that the exhibits are not marked as trial exhibits, are not part of any

28  expert's file, are not bates stamped, and are not relied upon by any expert.

         Plaintiff notes that Defendant's motion in limine # 2 (Doc. # 178) challenges the methodology

and qualifications of Plaintiff's expert Dr. Heinz Poppendiek, and notes that this Court can consider additional evidence in determining whether Poppendiek's testimony is relevant and reliable under *Daubert*, 509 U.S. 579 (1993). Plaintiff contends that the exhibits and declaration do not need to be marked as trial exhibits to be considered by the Court in connection with a *Daubert* hearing.

In considering a party's challenge to an expert witness, a district may hold a *Daubert* hearing to assess the relevance and reliability of an expert's proposed testimony. *United States v. Alatorre*, 22 F.3d 1098, 1102-03 (9th Cir. 2000); *see also Daubert*, 509 U.S. 579. In addition, trial courts may exercise discretion in "determining how to evaluate the relevance and reliability of expert opinion testimony . . . ." *Alatorre*, 22 F.3d at 1102-03 (9th Cir. 2000). Indeed, "[t]he law grants a district court . . . broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination," and "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142, 152 (1999); *see also United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006). In determining whether an expert's proposed testimony is relevant and reliable, "the trial court may consider . . . offers of proof, affidavits, stipulations, or learned treatises, in addition to testimonial or other documentary evidence (and, of course, legal argument)." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000); *see also In re: Hanford Nuclear Restoration Litigation*, 292 F3d 1124, 1138-39 (9th Cir. 2002).

The district court has broad authority to consider declarations and other documentary evidence in assessing the relevance and reliability of an expert's proposed testimony. *Kumho Tire Co.*, 526 U.S. at 142, 152. Here, Defendant objects to a declaration and certain exhibits which Plaintiff submitted to support the relevance and reliability of Poppendiek's proposed testimony. The Court concludes that Plaintiff properly submitted the evidence to support Poppendiek's proposed testimony, and further, that the Court can consider it in exercising its broad discretion in determining how to evaluate the relevance and reliability of proposed expert testimony. *See Kumho Tire Co.*, 526 U.S. at 142, 152; *Oddi*, 234 F.3d at 154; *In re: Hanford Nuclear Restoration Litigation*, 292 F3d at 1138-39.

Defendant's motion to strike (Doc. # 242) is DENIED.

**2.  Defendant's Ex Parte Application for an Order Allowing Defendant to File a Motion in Limine Exceeding The Page Limit (Doc. # 192)**

After reviewing the motion, and in consideration of the fact that this motion is not opposed by Plaintiff, Defendant's ex parte application for an order allowing Defendant to file a motion in limine exceeding the page limit (Doc. # 192) is GRANTED.

**3.  Plaintiff's Ex Parte Application for an Order Allowing Plaintiff to File an Opposition to Federal's Motion in Limine # 2 Exceeding the Page Limit (Doc. # 220-3)**

After reviewing the motion, and in consideration of the fact that this motion is not opposed by Defendant, Plaintiff's ex parte application for an order allowing Plaintiff to file an opposition to Defendant's motion in limine # 2 which exceeds the page limit (Doc. # 220-3) is GRANTED.

## CONCLUSION

It is hereby ORDERED that:

(1) Plaintiff's Motion in Limine # 1 (Doc. # 179) is GRANTED.

(2) Plaintiff's Motion in Limine # 2 (Doc. # 180) is DENIED.

(3) Plaintiff's Motion in Limine # 3 (Doc. # 181) is DENIED without prejudice.

(4) Plaintiff's Motion in Limine # 4 (Doc. # 182) is DENIED.

(5) Plaintiff's Motion in Limine # 5 (Doc. # 183) is GRANTED in part, and DENIED in part.

(6) Plaintiff's Motion in Limine # 6 (Doc. # 184) is GRANTED in part, and DENIED in part.

(7) Plaintiff's Motion in Limine # 7 (Doc. # 185) is GRANTED in part, and DENIED in part.

(8) Plaintiff's Motion in Limine # 8 (Doc. # 186) is GRANTED.

(9) Plaintiff's Motion in Limine # 9 (Doc. # 187) is DENIED without prejudice.

(10) Plaintiff's Motion in Limine # 10 (Doc. # 188) is GRANTED.

(11) Plaintiff's Motion in Limine # 11 (Doc. # 189) is DENIED without prejudice.

(12) Plaintiff's Motion in Limine # 12 (Doc. # 190) is GRANTED.

(13) Plaintiff's Motion in Limine # 13 (Doc. # 191) is GRANTED in part, and DENIED in part.

(14) Defendant's Motion in Limine # 1 (Doc. # 193) is DENIED without prejudice.

(15) Defendant's Motion in Limine # 2 (Doc. # 178) is DENIED.

1      (16) Defendant's Motion in Limine # 3 (Doc. # 169) is DEFERRED.

2      (17) Defendant's Motion in Limine # 4 (Doc. # 177) is DEFERRED.

3      (18) Defendant's Motion in Limine # 5 (Doc. # 170) is GRANTED.

4      (19) Defendant's Motion in Limine # 6 (Doc. # 171) is GRANTED.

5      (20) Defendant's Motion in Limine # 7 (Doc. # 172) is GRANTED in part, and DEFERRED

6  in part.

7      (21) Defendant's Motion in Limine # 8 (Doc. # 173) is DENIED.

8      (22) Defendant's Motion in Limine # 9 (Doc. # 174) is DEFERRED.

9      (23) Defendant's Motion in Limine # 10 (Doc. # 175) is DENIED without prejudice.

10      (24) Defendant's Motion in Limine # 11 (Doc. # 176) is DENIED.

11      (25) Defendant's Motion to Strike (Doc. # 242) is DENIED.

12      (26) Defendant's Ex Parte Application to file an over-length brief (Doc. # 192) is GRANTED.

13      (27) Plaintiff's Ex Parte Application to file an over-length response (Doc. # 220-3) is

14  GRANTED.

15      (28) Plaintiff's Supplemental Motion in Limine (Doc. # 251) is DENIED.

16

17      **IT IS SO ORDERED**.

18  DATED:  December 5, 2007

19                            William Q. Hayes

20                            **WILLIAM Q. HAYES**
                           United States District Judge

21

22

23

24

25

26

27

28