# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 350 W.A. LLC and HOKOJITSUGUYU COMPANY, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> CHUBB GROUP OF INSURANCE a/k/a FEDERAL INSURANCE COMPANY, <br><br> Defendant. | CASE NO. 05CV75 WQH (CAB) <br><br> SUPPLEMENTAL ORDER ON MOTIONS IN LIMINE |

HAYES, Judge:

Pending before the Court are Defendant's third, fourth, seventh, and ninth motions in limine. (Docs. # 169, 172, 174,177).

## PROCEDURAL BACKGROUND

On December 14, 2004, Plaintiffs David Blackburn (Blackburn) and Hokojitsuguyu Company (Hoko) filed this action in California State Superior Court in San Diego. *See* Notice of Removal (Doc. # 1). Plaintiffs asserted claims for breach of insurance contract, breach of the implied covenant of good faith and fair dealing, and other violations of state law against Defendant Federal Insurance Company (Federal). (Doc. # 1). Plaintiffs' claims concerned a building located at 350 West Ash Street in San Diego, California (the Property), and specifically water damage which the Property sustained in November and December 2002. Defendant Federal issued an insurance policy which insured the Property during November and December 2002, and the Complaint alleged that Defendant

1  Federal improperly denied Plaintiffs' insurance claims and delayed in compensating Plaintiffs under
2  the insurance policy in bad faith.

3  On December 12, 2005, Plaintiffs filed a First Amended Complaint which terminated David
4  Blackburn as a Plaintiff, and named 350 W.A., LLC (350 W.A.) as a new Plaintiff. (Doc. # 34). The
5  First Amended Complaint reasserted Plaintiffs claims for breach of contract, breach of the implied
6  covenant of good faith and fair dealing, and other miscellaneous relief. (Doc. # 34).

7  On January 4, 2007, and after the Court ruled on the parties' cross-motions for summary
8  judgment (Doc. # 101), the Court set this matter for jury trial. (Doc. # 165). The only claims which
9  remain to be tried to the jury are Plaintiff Hoko's claims for breach of insurance contract and breach
10 of the implied covenant of good faith and fair dealing. (Doc. # 101); Revised Proposed Pretrial Order.
11 The parties agree that 350 W.A. is no longer a party for the purposes of the jury trial. The jury trial
12 is scheduled to begin on Wednesday, February 13, 2008 at 9:00 A.M. (Doc. # 267).

13 **BACKGROUND ON THE MOTIONS IN LIMINE**

14 In the late summer and early fall of 2007, the parties filed and briefed motions in limine. On
15 Friday, September 7, 2007, the parties appeared at a motions in limine hearing, and on December 5,
16 2007, this Court issued a comprehensive Order on the motions in limine. (Doc. # 258). Though the
17 Court's Order of December 5, 2007, disposed of the majority of the pending motions in limine, the
18 Court deferred ruling on Defendant's motions in limine # 3, 4, and 9, and part of Defendant's motion
19 in limine in # 7. Defendant's motions in limine # 3, 4, 7, and 9 concern whether the opinions of
20 certain of Plaintiff's experts are based on good science, reliable, and relevant to the case at hand under
21 *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). Specifically, the motions
22 concern Plaintiff's proposed experts Steven Wright, Joseph Gildner, and Gene Royce.

23 On December 14, 2007, the parties appeared at a status conference to discuss, among other
24 things, Defendant's motions in limine # 3, 4, 7, and 9. (Doc. # 263). At the conference, the Court
25 identified portions of the opinions of Wright, Gildner, and Royce to which Defendant objected, and
26 informed Plaintiff that it would be given an opportunity to call those individuals to bolster their
27 qualifications and the foundation of their testimony. The Court set a hearing for that purpose to be
28 held January 10, 2008. (Doc. # 263).

On January 10, 2008, the parties appeared to argue the merits of Defendant's motions in limine # 3, 4, 7, and 9. Though given an opportunity, Plaintiff elected not to elicit testimony from Wright, Gildner, or Royce.

## LEGAL STANDARD FOR THE ADMISSION OF EXPERT TESTIMONY

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." FED. R. EVID. 402; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148-49 (1999).

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation, and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). In serving this "gatekeeper" function, a district court performs a two-part analysis. *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002). First, a district court "must determine nothing less than whether the experts' testimony reflects scientific knowledge, whether their findings are derived by the scientific method, and whether their work product amounts to good science." *Daubert v. Merrell Dow Pharmaceuticals (Daubert II)*, 43 F.3d 1311, 1315 (9th Cir. 1995) (internal quotations and citations omitted). "*Daubert's* general holding–setting forth the trial judge's general 'gatekeeping' obligation–applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 509 U.S. at 141. Second, the court "must ensure that the proposed expert testimony is relevant to the task at hand . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315.

"Trial courts must exercise reasonable discretion in evaluating and in determining how to evaluate the relevance and reliability of expert opinion testimony," and a court may hold what is known as a *Daubert* hearing to assist it in exercising its discretion. *United States v. Alatorre*, 22 F.3d 1098, 1102-03 (9th Cir. 2000). A trial judge has "considerable leeway" in deciding not only "how to go about determining whether particular expert testimony is reliable," but also in deciding whether the testimony is reliable. *Kumho Tire*, 509 U.S. at 153.

When considering whether expert testimony is reliable, a trial court should consider the factors

laid out by the United States Supreme Court in *Daubert*, 509 U.S. at 593-595, including, (1) "whether the theory or technique employed by the expert is generally accepted in the scientific community, (2) whether "it's been subjected to peer review and publication," (3) "whether it can be and has been tested," and (4) "whether the known or potential rate of error is acceptable." *Daubert II*, 43 F.3d at 1316-17 (citing *Daubert*, 509 U.S. at 593-595). The United States Supreme Court noted that the trial judge's reliability inquiry is "flexible," and therefore trial courts can and should consider other factors not specifically mentioned by the United States Supreme Court in *Daubert*. *Daubert*, 509 U.S. at 594. To that end, trial courts have also considered "whether the expert is proposing to testify about matters growing directly out of independent research he or she has conducted or whether the opinion was developed expressly for the purposes of testifying," whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion," "whether the expert has adequately accounted for obvious alternative explanations," "whether the expert is being as careful as he would be in his regular professional work," and "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion offered." *In re Silicone Gel Breast Implants Litigation*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (citing FED. R. EVID. 702 Advisory Committee's Notes); *see also Whisant v. U.S.*, Case No. C03-5121, 2006 U.S. Dist. LEXIS 76321, *6-7 (W.D. Wash Oct. 5, 2006).

## DEFENDANT'S PENDING MOTIONS IN LIMINE

**I. Defendant's # 3 & 4 - Motions to Exclude Expert Opinion Testimony of Steven C. Wright (Docs. # 169, 177)**

Plaintiff designated Steven C. Wright as a cost-estimation expert in this case. Defendant seeks to exclude the opinion testimony of Wright on the grounds that Wright's testimony is unreliable and lacks proper foundation. Specifically, Defendant contends that Wright's testimony improperly relies on (1) the untenable conclusions of Plaintiff's experts Poppendiek, Timmons, and Olsen that the Property required massive drywall replacement after the November and December 2002 flood incidents, and (2) the untenable conclusion that massive renovation would require the Property to comply with certain buildings codes or statutes.

In its Order of December 5, 2007, this Court found that the proffered expert testimony of

Poppendiek, Timmons, and Olsen was relevant and reliable, and concluded that each of those individuals will be permitted to testify at trial. (Doc. # 258). As Plaintiff correctly notes, experts are permitted to rely on the reports and opinions of other experts where those reports are of a type "reasonably relied upon by experts in the particular field." FED. R. EVID. 703; *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058, 1061-62 (9th Cir. 2003). After reviewing the briefing and evidence in this case, the Court concludes that a cost-estimation expert such as Wright can reasonably rely upon scientific reports such as those created by Poppendiek, Timmons, and Olsen. Accordingly, the Court concludes that the opinions of Wright are not unreliable on the grounds that Wright relied on the opinions of Poppendiek, Timmons, and Olsen.

To the extent that Defendant believes that Wright impermissibly extends the opinions of Poppendiek, Timmons, and Olsen, the Court finds that such issues are appropriately developed on cross-examination. "The weakness in the underpinnings of [expert] opinions may be developed upon cross-examination," as "such weakness goes to the weight and credibility of the testimony" as opposed to its admissibility. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n. 5 (9th Cir. 1987) (citing *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir. 1976)); *see also McLean v. 988011 Ontario*, 224 F.3d 797, 801 (6th Cir. 2000). Defendant's motion in limine # 3 (Doc. # 169) is DENIED without prejudice.

Notwithstanding Defendant's challenge to Wright's reliance on other experts' reports, Defendant contends that Wright's opinion with respect to code-compliance is unreliable and should be excluded. In his expert report, Wright explained that it was his opinion that water-damage at the Property,

> required the demolition and replacement of significant parts of floors 6-11, the elevator shafts, the stair wells, as well as portions of the 12th and 1st floors, including removal and replacement of ceilings, floor coverings, significant portions of interior petitions, and sprayed on fire coating . . . in order to restore the 350 West Ash building to its condition prior to the flood, in a manner compliant with applicable building codes, requirements for fire and life safety systems, Title 24, energy compliance requirements, and ADA requirements.

*Report of Steven Wright* (Doc. # 177, Ex. A at 2). Defendant contends that Wright's opinion with respect to code-compliance lacks foundation to such an extent that it is unreliable and could mislead a jury. Specifically, Defendant contends that Wright (a) never actually identified or examined

building codes with which the Property had to comply, and (b) improperly concluded that Title 24 and ADA requirements mandated certain repairs based upon a vague and undocumented meeting with an unnamed individual at the San Diego Building office.

Plaintiff concedes, and Wright admitted at deposition, that Wright's conclusion that Title 24 and the ADA required certain repairs at the Property was solely based upon a meeting Wright's associate, John Fink, had with an unnamed individual at the San Diego Building Office. (Doc. # 177, Ex. C at 28).[1] However, Wright could not identify (a) exactly what Fink told the unnamed San Diego Building Office individual, (b) the name of the individual at the San Diego Building Office, or (c) the title of the unnamed individual at the San Diego Building Office. (Doc. # 177, Ex. C at 40). Wright further indicated at deposition that the unnamed individual at the San Diego Building Office indicated that Title 24 and the ADA "[m]ost probably" required certain repairs, but that the unnamed individual could not say for sure whether code compliance was necessary unless Blackburn applied for a building permit. (Doc. # 177, Ex. C at 40). It is undisputed that Blackburn refused to allow Wright to apply for a permit. (Doc. # 177, Ex. C at 46).

After reviewing the briefing and the evidence submitted with respect to Wright's code-compliance opinion, the Court concludes that Wright's opinion that the Property had to comply with certain building codes, Title 24 energy requirements, and the ADA lacks foundation and is unreliable. Wright never identified provisions of the building code with which the Property had to comply, and was unable to identify a single provision in the Uniform Building Code which would require any repairs. (Doc. # 177, Ex. C at 39). In addition, Wright's opinion that Title 24 and the ADA required certain repairs or remediation was solely based an unnamed individual's opinion that Title 24 and the ADA might require certain repairs. The Court concludes that Wright's reliance on the unnamed individual at the San Diego Building Office was unreliable under the facts of this case. Furthermore, the Court finds that Wright's opinion that Title 24 and the ADA required certain repairs was inconsistent with the unnamed individuals alleged opinion, which was that Title 24 and the ADA "most probably" required some repairs. *See In re Silicone Gel Breast Implants Litigation*, 318 F.

---

[1] Wright indicated at deposition that he never personally met with anyone at the San Diego Building Office, despite the contrary notation in his report. *See* (Doc. # 177, Ex. A at 3, Ex. C at 33).

1  Supp. 2d at 890 (noting that a relevant factor in determining whether an expert's opinion is reliable is whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion").

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation, and is relevant to the task at hand." *Daubert*, 509 U.S. 579, 597 (1993). After reviewing the briefing and arguments with respect to Wright's code-compliance opinion, the Court concludes that it is not reliable. Accordingly, Wright's opinions with respect to code-compliance will be excluded from trial.

Defendant's motion in limine # 4 (Doc. # 177) is GRANTED.

**II. Defendant's # 7 - Motion to Exclude Opinion Testimony of Joseph Gildner (Doc. # 172)**

Plaintiff designated Joseph F. Gildner as a claims-handling and "bad faith" expert in this case, and Defendant seeks to exclude certain opinion testimony that Plaintiff may elicit from Gildner at trial. Defendant challenges Gildner's proposed testimony on the grounds that (1) Gildner is not an expert with respect to dry-wall testing, and therefore should not be permitted to opine as to whether Federal was required to perform certain tests, and (2) Gilder is not a mold expert, and therefore should not be permitted to testify as to growth rates of mold, and as to whether certain mold preexisted the November and December 2002 flood incidents.

**A. Gildner's Mold Opinions**

Gildner admitted at deposition that he is not an expert with respect to mold, and Plaintiff conceded at the January 10, 2008, hearing on the motions in limine that it does not seek to elicit from Gildner any expert opinion concerning mold. (Doc. # 172, Ex. A at 4-5). Accordingly, Defendant's motion in limine # 7 (Doc. # 172) is GRANTED to the extent that Plaintiff may seek to elicit testimony from Gildner with respect to mold.

**B. Gildner's Testing Opinions**

Gildner admitted at deposition that he is not an expert with respect to the testing of drywall, and Plaintiff conceded at the January 10, 2008, hearing on the motions in limine that it will not elicit any opinion from Gildner that Defendant performed the wrong tests from a scientific perspective.

1  (Doc. # 172, Ex. A at 13).  However, Plaintiff nevertheless seeks to elicit testimony from Gildner that
2  Defendant conducted improper tests in bad faith after Plaintiff presented Defendant with its dry-wall
3  test results because the tests Defendant conducted did not test for or address Plaintiff's concerns about
4  certain characteristics of the damaged dry-wall.

5  After reviewing the briefing, Gildner's deposition, and the parties statements at the January
6  10, 2008, hearing on motions in limine, the Court cannot at this time determine (1) precisely what
7  opinion Plaintiff seeks to elicit from Gildner with respect to testing, and (2) whether Gildner is
8  qualified to give any testimony with respect to testing.  Accordingly, the Court will defer ruling on
9  the balance of Defendant's motion in limine # 7 (Doc. # 172) until trial.

10  If and when Plaintiff seeks to elicit testimony from Gildner with respect to dry-wall testing,
11  the Court will require Gildner to testify outside the presence of the jury, and, after giving both parties
12  an opportunity to be heard, will determine whether Gildner's testing opinions are relevant and reliable
13  under *Daubert*.

14  Defendant's motion in limine # 7 (Doc. # 172) is GRANTED in part and DEFERRED in part
15  as detailed above.

16

17  **III.  Defendant's # 9 - Motion to Exclude Expert Opinion of Gene Royce, Esq. (Doc. # 174)**

18  Plaintiff designated Gene Royce, Esq. (Royce) as its expert on "the reasonableness of
19  Plaintiff's fees and costs incurred in connection with this lawsuit."  Defendant seeks to exclude
20  Royce's expert testimony in its entirety.  (Doc. # 174).

21  Defendant contends that Royce's methodology in assessing the reasonableness of Plaintiff's
22  attorney's fees is unreliable and an improper basis for expert opinion.  Defendant further contends that
23  Royce relied on bills and invoices unrelated to this litigation to support his opinion that Plaintiff's fees
24  and costs are reasonable.  Finally, Defendant contends that Royce should not be able to opine on
25  *Brandt* fees because Royce explicitly testified that he wasn't an expert on *Brandt* fees at his
26  deposition.

27  In response to Defendant's motion in limine # 9, Plaintiff makes two distinct arguments.  First,
28  Plaintiff contends that Royce can no longer testify as a witness in this case because Royce works for

a firm for which Federal is a major client. Plaintiff contends that the Court should allow Plaintiff to substitute a new expert in the place of Royce and deny Defendant's motion in limine # 9 as moot. Second, Plaintiff contends that despite Royce's "unique" methodology, Royce's proposed testimony is nevertheless relevant and reliable. *Plaintiff's Opposition to Defendant's Motion in Limine #9* (Doc. # 217 at 1, 3).

After reviewing the briefing and arguments with respect to Royce, and in recognition of Royce's claimed conflict of interest, the Court will allow Plaintiff to designate an additional expert with respect to fees in this case. Plaintiff shall produce the new expert's expert report on or before January 18, 2008, and shall make the new expert available for deposition on or before Friday, January 25, 2008.

In light of the Court's ruling, Defendant's motion in limine # 9 (Doc. # 174) is DENIED. However, the denial is without prejudice, and after receiving the expert report and deposing the expert, Defendant may again challenge the expert's opinion on any and all available grounds.

## CONCLUSION

Defendants's motion in limine # 3 (Doc. # 169) is DENIED without prejudice.

Defendant's motion in limine # 4 (Doc. # 177) is GRANTED.

Defendant's motion in limine # 7 (Doc. # 172) is GRANTED in part and DEFERRED in part.

Defendant's motion in limine # 9 (Doc. # 174) is DENIED without prejudice.

**IT IS SO ORDERED**.

DATED: January 15, 2008

**WILLIAM Q. HAYES**
United States District Judge